# Exhibit 2

MORTGAGE LOAN PURCHASE AND SERVICING AGREEMENT

This Mortgage Loan Purchase and Servicing Agreement is made and entered into as of September 1, 2005 (the "Agreement"), between Countrywide Home Loans, Inc., having an address at 4500 Park Granada, Calabasas, California 91302 ("Countrywide"), and Thornburg Mortgage Home Loans, Inc., having an address at 150 Washington Avenue, Suite 302, Santa Fe, New Mexico · 87501 (the "Purchaser").

## R E C I T A L S

The Purchaser has agreed to purchase from Countrywide and Countrywide has agreed to sell to the Purchaser all of Countrywide's right, title and interest, excluding servicing rights, in and to those certain mortgage loans identified in a Purchase Confirmation (as defined below) executed by Countrywide and the Purchaser. This Agreement is intended to set forth the terms and conditions by which Countrywide shall transfer and the Purchaser shall acquire such mortgage loans, and the terms pursuant to which Countrywide will service such Mortgage Loans.

In consideration of the promises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Countrywide and the Purchaser agree as follows:

## ARTICLE I

### DEFINITIONS

Unless the context requires otherwise, all capitalized terms used herein shall have the meanings assigned to such terms in this Article I unless defined elsewhere herein. Any capitalized term used or defined in a Purchase Confirmation that conflicts with the corresponding definition set forth herein shall supersede such term.

Adjustable Rate Mortgage Loan: Any Mortgage Loan in which the related Mortgage Note contains a provision whereby the Mortgage Interest Rate is adjusted from time to time in accordance with the terms of such Mortgage Note.

Agency: Either Fannie Mae or Freddie Mac.

Agency Transfer: The sale or transfer by the Purchaser of some or all of the Mortgage Loans to Fannie Mae or to Freddie Mac, retaining Countrywide as "servicer" thereunder.

ALTA: The American Land Title Association or any successor thereto.

Agreement: This Mortgage Loan Purchase and Servicing Agreement, including all exhibits and supplements hereto, and all amendments hereof.

Appraised Value: The value of the related Mortgaged Property as set forth in an appraisal made in connection with the origination of a Mortgage Loan or the sale price of the

related Mortgaged Property if the proceeds of such Mortgage Loan were used to purchase such Mortgaged Property, whichever is less.

Assignment of Mortgage: An assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect the sale of the Mortgage to the Purchaser.

Bailee Letter: The form of Bailee Letter attached hereto as Exhibit C that governs the temporary retention of the Collateral Files by the Custodian with respect to a Closing Date.

Balloon Mortgage Loan: Any Mortgage Loan wherein the Mortgage Note matures prior to full amortization and requires a final and accelerated payment of principal.

Business Day: Any day other than (i) a Saturday or Sunday, or (ii) a day on which banking and savings and loan institutions in the States of California, New York, Texas, or Maryland are authorized or obligated by law or executive order to be closed.

Cash Liquidation: Recovery of all cash proceeds by Countrywide with respect to the termination of any defaulted Mortgage Loan other than a Mortgage Loan which became an REO Property, including all PMI Proceeds, Other Insurance Proceeds, Liquidation Proceeds, Condemnation Proceeds and other payments or recoveries whether made at one time or over a period of time which Countrywide deems to be finally recoverable, in connection with the sale or assignment of such Mortgage Loan, trustee's sale, foreclosure sale or otherwise.

Closing: The consummation of the sale and purchase of each Mortgage Loan Package.

Closing Date: The date on which the purchase and sale of the Mortgage Loans constituting a Mortgage Loan Package is consummated, as set forth in the Trade Confirmation and Purchase Confirmation.

Code: The Internal Revenue Code of 1986, as amended from time to time, or any successor statute thereto.

Collateral Documents: The collateral documents pertaining to each Mortgage Loan as set forth in Exhibit A hereto.

Collateral File: With respect to each Mortgage Loan, a file containing each of the Collateral Documents.

Condemnation Proceeds: All awards or settlements in respect of a taking of all or a part of a Mortgaged Property by exercise of the power of eminent domain or condemnation.

Conventional Mortgage Loan: A Mortgage Loan that is not insured by the FHA or guaranteed by the VA.

Convertible Mortgage Loan: Any Adjustable Rate Mortgage Loan that contains a provision whereby the Mortgagor is permitted to convert the Mortgage Loan to a fixed-rate mortgage loan in accordance with the terms of the related Mortgage Note.

Cooperative: A corporation that has been formed for the purpose of cooperative apartment ownership.

Cooperative Assets: The Cooperative Shares, the related proprietary lease and any other collateral securing the Cooperative Loans.

Cooperative Building: The building and other property owned by a Cooperative.

Cooperative Loan: The indebtedness of a Mortgagor evidenced by a Mortgage Note which is secured by Cooperative Assets and which is being sold to the Purchaser pursuant to this Agreement, the Cooperative Loans so sold being identified in the Mortgage Loan Schedule.

Cooperative Unit: A specific dwelling unit in a Cooperative Building as to which exclusive occupancy rights have been granted pursuant to a proprietary lease.

Countrywide: Countrywide Home Loans, Inc., or any successor or assign to Countrywide under this Agreement as provided herein.

Credit File: The file retained by Countrywide that includes the mortgage loan documents delineated in Exhibit E attached hereto pertaining to a Mortgage Loan which Credit File may be maintained by Countrywide on microfilm or any other comparable medium.

Credit Risk Manager: The Purchaser.

Custodial Account: The account or accounts created and maintained pursuant to Section 4.4, each of which shall be an Eligible Account.

Custodian: LaSalle Bank, National Association, its successor in interest or assign, or such other custodian that may be designated by the Purchaser from time to time.

Customary Servicing Procedures: The procedures, including collection procedures, and care that Countrywide customarily employs and exercises in servicing and administering mortgage loans for its own account and for Fannie Mae and in accordance with accepted mortgage servicing practices of prudent lending institutions.

Cut-off Date: The first day of the month in which the related Closing Date occurs or such other date as may be set forth in the related Trade Confirmation and/or Purchase Confirmation.

Cut-off Date Balance: The aggregate scheduled unpaid principal balance of the Mortgage Loans in a Mortgage Loan Package as of the Cut-off Date, after application of (i) scheduled payments of principal due on such Mortgage Loans on or before such Cut-off Date, whether or not collected, and (ii) any Principal Prepayments received from the Mortgagor prior to the date on which the Mortgage Loan Schedule is prepared.

Determination Date: The Business Day immediately preceding the related Remittance Date.

Due Date: The day of the month on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

-3-

Due Period: With respect to each Remittance Date, the period commencing on the second day of the month preceding the month of the Remittance Date and ending on the first day of the month of the Remittance Date.

Eligible Account: An account or accounts (i) (A) maintained with a depository institution the short term debt obligations of which are rated by Standard & Poor's, a division of McGraw-Hill companies, in one of its two (2) highest rating categories at the time of any deposit therein, and (B) the deposits of which are insured up to the maximum permitted by the FDIC, or (ii) maintained with an institution and in a manner acceptable to Fannie Mae.

Escrow Account: The separate trust account or accounts created and maintained pursuant to Section 4.6, each of which shall be an Eligible Account.

Escrow Payments: The amounts constituting ground rents, taxes, assessments, water rates, mortgage insurance premiums, fire and hazard insurance premiums and other payments required to be escrowed by the Mortgagor with the Mortgagee pursuant to any Mortgage Loan.

Event of Default: Any one of the conditions or circumstances enumerated in Section 7.1.

FDIC: The Federal Deposit Insurance Corporation, or any successor thereto.

Fannie Mae: The Federal National Mortgage Association or any successor organization.

Fidelity Bond: A fidelity bond to be maintained by Countrywide pursuant to Section 4.12.

Freddie Mac: The Federal Home Loan Mortgage Corporation or any successor organization.

Funding Deadline: With respect to each Closing Date, one o'clock p.m. (1:00 p.m.) New York time, or such other time mutually agreed to by the Purchaser and Countrywide.

Gross Margin: With respect to each Adjustable Rate Mortgage Loan, the fixed percentage amount set forth in the related Mortgage Note, which amount is added to the index in accordance with the terms of the related Mortgage Note to determine on each Interest Adjustment Date, the Mortgage Interest Rate for such Mortgage Loan.

HUD: The Department of Housing and Urban Development or any federal agency or official thereof which may from time to time succeed to the functions thereof.

Interest Adjustment Date: With respect to an Adjustable Rate Mortgage Loan, the date on which an adjustment to the Mortgage Interest Rate on a Mortgage Note becomes effective.

LTV: With respect to any Mortgage Loan, the ratio (expressed as a percentage) of the Stated Principal Balance (or the original principal balance, if so indicated) of such Mortgage Loan as of the date of determination to the Appraised Value of the related Mortgaged Property.

-4-

Late Collections:  With respect to any Mortgage Loan, all amounts received during any Due Period, whether as late payments of Monthly Payments or as Liquidation Proceeds, Condemnation Proceeds, PMI Proceeds, Other Insurance Proceeds, proceeds of any REO Disposition or otherwise, which represent late payments or collections of Monthly Payments due but delinquent for a previous Due Period and not previously recovered.

Lifetime Rate Cap:  With respect to each Adjustable Rate Mortgage Loan, the absolute maximum Mortgage Interest Rate payable, above which the Mortgage Interest Rate shall not be adjusted, as set forth in the related Mortgage Note and Mortgage Loan Schedule.

Liquidation Proceeds:  Amounts, other than PMI Proceeds, Condemnation Proceeds and Other Insurance Proceeds, received by Countrywide in connection with the liquidation of a defaulted Mortgage Loan through trustee's sale, foreclosure sale or otherwise, other than amounts received following the acquisition of an REO Property pursuant to Section 4.13.

Master Servicer:  Wells Fargo Bank, N.A., its successor in interest, or such other master servicer that may be designated by the Purchaser, in writing, from time to time.

MERS:  Mortgage Electronic Registration Systems, Inc. or any successor or assign thereto.

MERS Mortgage Loan:  Any Mortgage Loan registered with MERS on the MERS System.

MERS System:  The electronic system of recording transfers of mortgages maintained by MERS.

Monthly Advance:  The advances made or required to be made by Countrywide on any Remittance Date pursuant to Section 5.3.

Monthly Payment:  The scheduled monthly payment of principal and interest on a Mortgage Loan.

Mortgage:  The mortgage, deed of trust or other instrument securing a Mortgage Note, which creates a first priority lien on an unsubordinated estate in fee simple in real property securing the Mortgage Note or, in a jurisdiction in which the use of leasehold estates for residential properties is a widely accepted practice, a lien upon a leasehold estate of the Mortgagor, provided that the term of the leasehold expires at least five (5) years after the expiration of the term of the Mortgage.

Mortgage Interest Rate:  The annual rate at which interest accrues on any Mortgage Loan in accordance with the provisions of the related Mortgage Note.

Mortgage Loan:  Any mortgage loan that is sold pursuant to this Agreement, as evidenced by such mortgage loan's inclusion on the related Mortgage Loan Schedule, which mortgage loan includes the Credit File, the Monthly Payments, Principal Prepayments, Liquidation Proceeds, Condemnation Proceeds, PMI Proceeds (if applicable), Government Insurance Proceeds (if applicable), Other Insurance Proceeds, REO Disposition proceeds, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan, excluding the servicing rights relating thereto. Unless the context requires otherwise, any

reference to the Mortgage Loans in this Agreement shall refer to the Mortgage Loans constituting a Mortgage Loan Package.

Mortgage Loan Package: The Mortgage Loans sold to the Purchaser pursuant to a Purchase Confirmation.

Mortgage Loan Remittance Rate: With respect to each Mortgage Loan, the interest rate payable to the Purchaser on each Remittance Date which shall equal the Mortgage Interest Rate less the Servicing Fee and the LPMI Fee, if applicable.

Mortgage Loan Schedule: With respect to each Mortgage Loan Package, the schedule of Mortgage Loans included therein and made a part of the related Purchase Confirmation, which schedule shall include the information delineated in Exhibit D attached hereto with respect to each Mortgage Loan.

Mortgage Note: The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

Mortgaged Property: The real property (or leasehold estate, if applicable) securing repayment of the debt evidenced by a Mortgage Note pursuant to the related Mortgage, and with respect to a Cooperative Loan, the Cooperative Assets.

Mortgagee: The mortgagee or beneficiary named in the Mortgage and the successors and assigns of such mortgagee or beneficiary.

Mortgagor: The obligor on a Mortgage Note or a person who has executed a Mortgage.

Officer's Certificate: A certificate signed by the Chairman of the Board, the Vice Chairman of the Board, the President or a Vice President, Authorized Signatory or General Manager of the Company, and delivered to the Purchaser as required by this Agreement.

Opinion of Counsel: A written opinion of counsel, who may be an employee of the party on behalf of whom the opinion is being given.

Other Insurance Proceeds: Proceeds of any title policy, hazard policy, pool policy or other insurance policy covering a Mortgage Loan, other than the PMI Policy, if any, to the extent such proceeds are not to be applied to the restoration of the related Mortgaged Property or released to the Mortgagor in accordance with Customary Servicing Procedures.

Pass-Through Transfer: The sale or transfer of some or all of the Mortgage Loans to a trust to be formed as part of a publicly or privately traded, rated or unrated mortgage pass-through, pay-through or other mortgage-backed securities transaction retaining Countrywide as servicer or sub-servicer thereunder.

Payment Adjustment Date: As to each Mortgage Loan, the date on which an adjustment to the Monthly Payment on a Mortgage Note becomes effective.

Periodic Rate Cap: With respect to each Adjustable Rate Mortgage Loan, the provision of each Mortgage Note which provides for an absolute maximum amount by which the Mortgage Interest Rate therein may increase or decrease on an Adjustment Date above or below

the Mortgage Interest Rate previously in effect, equal to the rate set forth on the Mortgage Loan Schedule per adjustment.

Person: Any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

PMI Policy: A policy of private mortgage guaranty insurance relating to a Mortgage Loan and issued by a Qualified Insurer.

PMI Proceeds: Proceeds of any PMI Policy.

Prepayment Interest Shortfall Amount: With respect to any Mortgage Loan that was subject to a Principal Prepayment in full or in part during the calendar month preceding the month of the related Remittance Date, which Principal Prepayment was applied to such Mortgage Loan prior to such Mortgage Loan's Due Date in such calendar month, the amount of interest (at the Mortgage Loan Remittance Rate) that would have accrued on the amount of such Principal Prepayment during the period commencing on the date as of which such Principal Prepayment was applied to such Mortgage Loan and ending on the day immediately preceding such Due Date, inclusive.

Preliminary Mortgage Loan Package: The mortgage loans identified or described in a Trade Confirmation, which, subject to the Purchaser's due diligence as contemplated in Section 2.1, are intended to be sold under this Agreement as a Mortgage Loan Package.

Preliminary Mortgage Loans: The mortgage loans constituting a Preliminary Mortgage Loan Package.

Premium:     With respect to any Mortgage Loan purchased above par, which is equal to the product of (a) the positive difference between (i) the Purchase Price Percentage and (ii) 100%, times (b) the Stated Principal Balance of such Mortgage Loan at time of repurchase.

Premium Recapture Percentage: With respect to the repurchase of any Mortgage Loan to be repurchased above par, that percentage determined in accordance with the following:

| If repurchase is requested during the Indicated month from the Closing Date: | Premium Recapture Percentage will be the following: |
|---|---|
| Months:    0-1, inclusive | 100% of the Premium |
| month 2 | 91.67% of the Premium |
| month 3 | 83.34% of the Premium |
| month 4 | 75.01% of the Premium |
| month 5 | 66.68% of the Premium |
| month 6 | 58.35% of the Premium |
| month 7 | 50.02% of the Premium |
| month 8 | 41.69% of the Premium |
| month 9 | 33.36% of the Premium |
| month 10 | 25.03% of the Premium |
| month 11 | 16.7% of the Premium |
| month 12 | 8.37% of the Premium |

following month 12                         0% of the Premium

Principal Prepayment:  Any payment or other recovery of principal on a Mortgage
Loan which is received in advance of its scheduled Due Date, excluding any prepayment penalty
or premium thereon (unless the Purchase Confirmation or the Trade Confirmation provides
otherwise), which is not accompanied by an amount of interest representing scheduled interest
due on any date or dates in any month or months subsequent to the month of prepayment.

Principal Prepayment Period:  As to any Remittance Date, the calendar month
preceding the month of distribution.

Purchase Confirmation:  A letter agreement, substantially in the form of Exhibit B
hereto, executed by Countrywide and the Purchaser in connection with the purchase and sale of
each Mortgage Loan Package, which sets forth the terms relating thereto including a description
of the related Mortgage Loans (including the Mortgage Loan Schedule), the purchase price for
such Mortgage Loans, the Closing Date and the Servicing Fee Rate.

Purchase Proceeds:  The amount paid on the related Closing Date by the
Purchaser to Countrywide in exchange for the Mortgage Loan Package purchased on such
Closing Date as set forth in the applicable Trade Confirmation and Purchase Confirmation.

Purchaser:  The Person identified as the "Purchaser" in the preamble to this
Agreement or its successor in interest or any successor or assign to the Purchaser under this
Agreement as herein provided.  Any reference to "Purchaser" as used herein shall be deemed to
include any designee of the Purchaser.

Qualified Insurer:  An insurance company duly qualified as such under the laws
of the states in which the Mortgaged Properties are located, duly authorized and licensed in such
states to transact the applicable insurance business and to write the insurance provided, which
insurer is approved in such capacity by Fannie Mae.

Qualified Substitute Mortgage Loan:  A mortgage loan that must, on the date of
such substitution, (i) have an unpaid principal balance, after deduction of all scheduled payments
due in the month of substitution (or if more than one (1) mortgage loan is being substituted, an
aggregate principal balance), not in excess of the unpaid principal balance of the repurchased
Mortgage Loan (the amount of any shortfall will be deposited in the Custodial Account by
Countrywide and distributed to the Purchaser on the Remittance Date following the substitution);
(ii) have a Mortgage Interest Rate not less than, and not more than 1% greater than, the Mortgage
Interest Rate of the repurchased Mortgage Loan; (iii) have a remaining term to maturity not
greater than, and not more than one year less than, the maturity date of the repurchased Mortgage
Loan; (iv) comply with each representation and warranty (respecting individual Mortgage Loans)
set forth in Section 3.2 hereof; (v) shall be the same type of Mortgage Loan (i.e., a Convertible
Mortgage Loan or a Fixed Rate Mortgage Loan).

Rating Agency:  Any of Fitch, Inc., Moody's Investors Service, Inc. or Standard
& Poor's Corporation, or their respective successors designated by the Purchaser.

Reconstitution Agreements:  The agreement or agreements entered into by the
Purchaser, Countrywide, an Agency or certain third parties on the Reconstitution Date(s) with
respect to any or all of the Mortgage Loans serviced hereunder, in connection with a Pass-

Through Transfer, an Agency Transfer or a Whole Loan Transfer as set forth in Section 9.1. Such agreement or agreements shall provide for servicing compensation to Countrywide at least equal to the Servicing Fee due Countrywide in accordance with this Agreement.

Reconstitution Date:  The date or dates on which any or all of the Mortgage Loans serviced under this Agreement shall be removed from this Agreement and reconstituted as part of an Agency Transfer, Whole Loan Transfer or Pass-Through Transfer pursuant to Section 9.1 hereof.

REMIC:  A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

REMIC Documents:  The document or documents creating and governing the administration of a REMIC.

REMIC Provisions:  Provisions of the federal income tax law relating to a REMIC, which appear at Section 860A through 860G of Subchapter M of Chapter 1, Subtitle A of the Code, and related provisions and ruling or pronouncements promulgated thereunder, as the foregoing may be in effect from time to time.

Remittance Date:  The eighteenth (18th) day of any month, beginning with the month next following the month in which the related Cut-off Date occurs, or if such eighteenth (18th) day is not a Business Day, the first Business Day immediately following.

REO Disposition:  The final sale by Countrywide of any REO Property or the transfer of the management of such REO Property to the Purchaser as set forth in Section 4.13.

REO Property:  A Mortgaged Property acquired by Countrywide on behalf of the Purchaser as described in Section 4.13.

Repurchase Price:  With respect to any Mortgage Loan, a price equal to the sum of (a) the Stated Principal Balance of the Mortgage Loan at the time of repurchase, and (b) interest on such Stated Principal Balance at the Mortgage Loan Remittance Rate from the last date through which interest has been paid and distributed to the Purchaser to the date of repurchase, plus (c) the product of (i) the Premium, if applicable, and (ii) the Premium Recapture Percentage, if applicable, less amounts received or advanced in respect of such repurchased Mortgage Loan which amounts are being held in the Custodial Account for distribution in the month of repurchase, plus any advances made by the Purchaser.

Segment(s):  The subset(s) of Preliminary Mortgage Loans in a Preliminary Mortgage Loan Package identified in the related Trade Confirmation or Mortgage Loans in the Mortgage Loan Package identified in the related Purchase Confirmation, that has unique characteristics and thus may be referred to separate and apart from other Preliminary Mortgage Loans or Mortgage Loans, respectively.  References to a Segment(s) shall typically be accompanied by an additional identifier, i.e., Segment A, which shall also be identified in the related Trade Confirmation or Purchase Confirmation, as applicable.

Servicing Advances:  All customary, reasonable and necessary "out of pocket" costs and expenses incurred in the performance by Countrywide of its servicing obligations, including the cost of (i) the preservation, restoration and protection of the Mortgaged Property,

(ii) any enforcement or judicial proceedings, including foreclosures, (iii) the management and liquidation of the REO Property, (iv) with respect to Government Mortgage Loans, amounts advanced to the Purchaser for which Countrywide may be entitled to receive reimbursement from a government agency and (v) compliance with the obligations under this Agreement including Section 4.9.

Servicing Fee: With respect to each Mortgage Loan, the amount of the annual fee the Purchaser shall pay to Countrywide, which shall, for a period of one full month, be equal to one-twelfth of the product of (i) the Servicing Fee Rate and (ii) the Stated Principal Balance of such Mortgage Loan. Such fee shall be payable monthly, computed on the basis of the same principal amount and period respecting which any related interest payment on a Mortgage Loan is computed. The obligation of the Purchaser to pay the Servicing Fee is limited to, and the Servicing Fee is payable solely from, the interest portion of such Monthly Payment collected by Countrywide, or as otherwise provided herein. Subject to the foregoing, and with respect to each Mortgage Loan, Countrywide shall be entitled to receive its Servicing Fee through the disposition of any related REO Property and the Servicing Fee payable with respect to any REO Property shall be based on the Stated Principal Balance of the related Mortgage Loan at the time of foreclosure.

Servicing Fee Rate: With respect to any Mortgage Loan, the rate per annum set forth in the applicable Trade Confirmation and/or the Purchase Confirmation.

Servicing Officer: Any officer of Countrywide involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name appears on a list of servicing officers furnished by Countrywide to Purchaser upon request, as such list may from time to time be amended.

Stated Principal Balance: With respect to each Mortgage Loan as of any date of determination: (i) the unpaid principal balance of the Mortgage Loan at the Cut-off Date after giving effect to payments of principal due on or before such date, whether or not received, minus (ii) all amounts previously distributed to the Purchaser with respect to the related Mortgage Loan representing payments or recoveries of principal or advances in lieu thereof.

Trade Confirmation: A letter agreement executed by Countrywide and the Purchaser prior to the applicable Closing Date confirming the terms of a prospective purchase and sale of a Mortgage Loan Package.

Transaction Documents: The Trade Confirmation, the Purchase Confirmation and this Agreement.

Updated LTV: With respect to any Mortgage Loan, the outstanding principal balance of such Mortgage Loan as of the date of determination divided by the value of the related Mortgaged Property as determined by a recent appraisal of the Mortgaged Property.

VA: The Department of Veterans Affairs.

Whole Loan Transfer: The sale or transfer by the Purchaser of some or all of the Mortgage Loans in a whole loan format.

-10-

## ARTICLE II

### PRE-CLOSING AND CLOSING PROCEDURES

#### Section 2.1. **Due Diligence by the Purchaser**.

(a)    Review of Credit File. At least ten (10) Business Days prior to the Closing Date, or as otherwise contemplated in the Transaction Documents, Countrywide shall make available to the Purchaser the Credit File for each Preliminary Mortgage Loan in the related Preliminary Mortgage Loan Package. The Purchaser shall have the right to review the Credit File for each such Preliminary Mortgage Loan, at Countrywide's offices or such other location agreed upon by the Purchaser and Countrywide, for the purpose of determining whether each Preliminary Mortgage Loan conforms in all material respects to the applicable terms contained in the Transaction Documents, which determination shall be made in the Purchaser's reasonable and good faith discretion. In the event that the Purchaser rejects any Preliminary Mortgage Loan based on such review, Countrywide shall have the right, in its sole discretion, to substitute replacement Preliminary Mortgage Loans satisfying the requirements set forth above, and the Purchaser shall have the right to review any such replacement Preliminary Mortgage Loan(s) in the manner contemplated above. The Purchaser shall use its reasonable best efforts to conduct its due diligence, and to convey the results thereof to Countrywide, within the time and in the manner necessary to permit Countrywide to rebut or cure any Preliminary Mortgage Loan or to substitute replacement Preliminary Mortgage Loans as permitted herein. The fact that the Purchaser has conducted or has failed to conduct any partial or complete examination of the Credit File shall not affect the Purchaser's right to demand repurchase or to avail itself of any other remedy available hereunder.

(b)    Rejection of Preliminary Mortgage Loans. Without limiting the generality of the foregoing, in the event that the Purchaser rejects Preliminary Mortgage Loans (i) comprising more than ten percent (10%) of the related Preliminary Mortgage Loan Package (as measured by unpaid principal balance), unless the Purchase Confirmation or the Trade Confirmation provides otherwise, or (ii) for reasons other than as permitted under this Agreement or the Trade Confirmation, Countrywide may, in its sole discretion, rescind its offer to sell any of the Preliminary Mortgage Loans relating thereto to the Purchaser and Countrywide shall have no liability therefor.

**Section 2.2. Identification of Mortgage Loan Package**. At least three (3) Business Days prior to the Closing Date, the Purchaser shall identify those Preliminary Mortgage Loans that the Purchaser intends to be included in the Mortgage Loan Package.

**Section 2.3. Post-Closing Due Diligence**. In the event that the Purchaser fails to complete its due diligence, as contemplated in Section 2.1, with respect to any Preliminary Mortgage Loan, the Purchaser and Countrywide may nonetheless mutually agree to the purchase and sale of such Mortgage Loan as contemplated hereunder, and upon such mutual agreement, if the Purchaser provides notice to Countrywide of such Mortgage Loan and such Mortgage Loan is identified as such in the Purchase Confirmation (as used therein, the "Pending Mortgage Loans"), the Purchaser shall have the right to review the related Credit File for such Mortgage Loan within ten (10) Business Days after the Closing Date and, based on such review and within such ten (10) Business Days period, request that Countrywide repurchase any Pending Mortgage Loan that the Purchaser reasonably and in good faith contends does not conform in all material respects to the applicable terms of the Transaction Documents. Countrywide shall have ten (10)

Business Days from the date of its receipt of such request to either (a) repurchase such Mortgage Loan at the purchase price for such Mortgage Loan (as calculated under the related Transaction Documents, as applicable) plus accrued and unpaid interest, or (b) provide evidence reasonably satisfactory to the Purchaser that such Mortgage Loan does in fact conform to the terms of the Transaction Documents, as applicable. In the event that Countrywide must repurchase any Mortgage Loan in accordance with this Section 2.3 or pursuant to any other applicable term contained in the Transaction Documents, Countrywide may, at its option, substitute replacement Mortgage Loans conforming in all material respects to the applicable terms contained in the related Transaction Documents which is reasonably acceptable to the Purchaser. The rights and remedies set forth in this Section 2.3 are in addition to those set forth in Section 3.3.

In the event a Mortgage Loan has been paid in full as of the related Closing Date, within five (5) Business Days of notification of such pay-off by the Purchaser to Countrywide, Countrywide shall reimburse the Purchaser the product of (a) the positive difference, if any, between the purchase price percentage for such Mortgage Loan and par, and (b) the Stated Principal Balance of such Mortgage Loan as of the Cut-off Date.

**Section 2.4. Credit Document Deficiencies Identified During Due Diligence.**
If, with respect to a Mortgage Loan Package, the related Purchase Confirmation identifies any Mortgage Loan for which the related Credit File is missing material documentation (as used therein, the "Missing Credit Documents"), Countrywide agrees to procure each such Missing Credit Document within sixty (60) days following the related Closing Date. In the event of a default by a Mortgagor or any material impairment of the Mortgaged Property, in either case directly arising from the failure of Countrywide to deliver the Missing Credit Document within the time specified above, Countrywide shall indemnify the Purchaser to the extent of such loss relating thereto.

### Section 2.5. Delivery of Collateral Files.

(a)      Bailee Letter. Countrywide shall, unless agreed otherwise by the parties hereto, on or before the fifth (5th) Business Day prior to the related Closing Date, deliver and release to the Custodian the Collateral File for each Mortgage Loan in the Mortgage Loan Package and shall execute, and cause the Custodian to execute, the Bailee Letter. The Purchaser shall pay all fees and expenses of the Custodian. Countrywide shall sort the documents delivered to the Custodian by each Mortgage Loan.

(b)      Missing Collateral Documents. In the event that any of the original Collateral Documents set forth in clauses (4) through (6), (8) and (9) of Exhibit A hereto have not been delivered to the Custodian (each, a "Missing Collateral Document"), then Countrywide shall have (i) with respect to any Missing Collateral Document sent for recording, twelve (12) months from the related Closing Date, or (ii) with respect to all other Missing Collateral Documents, one-hundred twenty (120) days from the Closing Date, to deliver to the Purchaser such Missing Collateral Documents. Notwithstanding the foregoing, Countrywide shall not be deemed to be in breach of this Agreement if its failure to deliver to the Purchaser any Missing Collateral Document within the time specified above is due solely to (i) the failure of the applicable recorder's office to return a Missing Collateral Document that was sent for recording or (ii) the failure of the title insurer to issue and deliver the original mortgagee title policy, except where such refusal to issue the policy is based on a claim that the title insurer is under no obligation to issue such policy. In addition, within one hundred twenty (120) days after the subject Closing Date, Countrywide shall deliver to the Purchaser a certificate certifying that,

-12-

subject to any exceptions as shall be specified therein, all such original documents, with evidence of recording thereon, have been so delivered.

(c) Other Documents. Countrywide shall forward to the Purchaser in a timely manner any original documents evidencing an assumption, modification, consolidation or extension of any Mortgage Loan entered into in accordance with this Agreement upon execution and, if applicable, recordation thereof; provided however, Countrywide shall provide the Purchaser with a certified true copy of any such document submitted for recordation.

Section 2.6. Purchase Confirmation. Upon confirmation with the Purchaser of a Mortgage Loan Package. Countrywide shall prepare and deliver to the Purchaser for execution the related Purchase Confirmation which shall be reasonably acceptable to the Purchaser, executed by an authorized signatory of Countrywide.

Section 2.7. Closing. The Closing of each Mortgage Loan Package shall take place on the related Closing Date and shall be subject to the satisfaction of each of the following conditions, unless otherwise waived by the prejudiced party(ies):

(a) All of the representations and warranties of Countrywide under this Agreement shall be true and correct in all material respects as of the Closing Date and no event shall have occurred that, with notice or the passage of time, would constitute a default under this Agreement;

(b) All of the representations and warranties of the Purchaser under this Agreement shall be true and correct in all material respects as of the Closing Date and no event shall have occurred that, with notice or the passage of time, would constitute a default under this Agreement;

(c) Both parties shall have executed the related Purchase Confirmation and Bailee Letter;

(d) The Purchaser shall have received an Officer's Certificate addressed to the Purchaser dated as of the Closing Date, substantially in the form of Exhibit G hereto;

(e) The Purchaser shall have received from Countrywide an executed Servicing Control Notice in the form of Exhibit F hereto; and

(f) The parties shall have executed and/or delivered, as applicable, all other documents required to be executed and/or delivered pursuant to the Transaction Documents.

Section 2.8. Payment of the Purchase Proceeds. Subject to the conditions set forth in Section 2.7, and in consideration for the Mortgage Loan Package to be purchased by the Purchaser on the related Closing Date, the Purchaser shall pay to Countrywide on such Closing Date the Purchase Proceeds by wire transfer of immediately available funds to the account designated by Countrywide on or before the Funding Deadline.

Section 2.9. Entitlement to Payments on the Mortgage Loans. With respect to any Mortgage Loan purchased hereunder, the Purchaser shall be entitled to (a) all scheduled principal due after the related Cut-off Date; (b) all other recoveries of principal collected after

-13-

the related Cut-off Date, except for (i) recoveries of principal collected after the Cut-off Date and prior to the Closing Date that are reflected in the Mortgage Loan Schedule, and (ii) all scheduled payments of principal due on or before the related Cut-off Date; and (c) all payments of interest on such Mortgage Loan net of interest at the Servicing Fee Rate and the LPMI Fee, if applicable (minus that portion of any such payment that is allocable to the period prior to the related Cut-off Date).

**Section 2.10. Payment of Costs and Expenses.** The Purchaser and Countrywide shall each bear its own costs and expenses in connection with the purchase and sale of the Mortgage Loans including any commissions due its sales personnel, the legal fees and expenses of its attorneys and any due diligence expenses. Without limiting the generality of the foregoing, any costs and expenses incurred in connection with recording the Assignment of Mortgage or any subsequent assignment thereof shall be paid for by the Purchaser.

### Section 2.11. MERS Mortgage Loans and the MERS System.

(a)     Notwithstanding anything contained in this Agreement to the contrary, with respect to any MERS Mortgage Loan sold to the Purchaser by Countrywide pursuant to this Agreement, Countrywide shall cause, within five (5) Business Days of the related Closing Date, the registration of such MERS Mortgage Loan to be changed on the MERS System to reflect the Purchaser as the beneficial owner of such MERS Mortgage Loan pursuant to the Purchaser's instructions. The foregoing obligation of Countrywide shall be in lieu of Countrywide delivering to the Purchaser an Assignment of Mortgage for such MERS Mortgage Loan. With respect to the Mortgage and intervening assignments related to any MERS Mortgage Loan, Countrywide shall, in accordance with Section 2.5, provide the Purchaser with the original Mortgage with the MIN number and evidence of registration with MERS and, as applicable, the originals of all intervening assignments of the Mortgage, including the Assignment to MERS with the MIN number, with evidence of recording thereon prior to the registration of the Mortgage Loan with the MERS System. To reflect the transfer properly, the beneficial rights will be transferred and reflect Purchaser's MERS org ID of 1000586. Also, the custodian field should be populated with the Custodian's MERS org ID of 1000567.

(b)     In connection with the MERS System, Countrywide is hereby authorized and empowered, in its own name, to register, or change the registration of any MERS Mortgage Loan to effectuate such registration. Further, subject to the Purchaser's prior consent, Countrywide is authorized to cause the removal of any MERS Mortgage Loan from such registration, and to execute and deliver on behalf of itself and the Purchaser, any and all instruments of assignment and comparable instruments with respect to any registration and/or removal of such MERS Mortgage Loan on or from the MERS System.

### ARTICLE III

### REPRESENTATIONS AND WARRANTIES; REMEDIES FOR BREACH

**Section 3.1. Representations and Warranties Respecting Countrywide.** Countrywide represents, warrants and covenants to the Purchaser that, as of each Closing Date:

(a)    Organization and Standing. Countrywide is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is organized and is qualified and licensed to transact business in and is in good standing under the laws of each state where each Mortgaged Property is located to the extent necessary to ensure the enforceability of each Mortgage Loan and the servicing of the Mortgage Loan in accordance with the terms of this Agreement;

(b)    Due Authority. Countrywide has the full power and authority to (i) perform and enter into and consummate all transactions contemplated by this Agreement and (ii) to sell each Mortgage Loan;

(c)    No Conflict. Neither the acquisition or origination of the Mortgage Loans by Countrywide, the sale of the Mortgage Loans to the Purchaser, the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of Countrywide's certificate of incorporation or by-laws or result in a material breach of any legal restriction or any material agreement or instrument to which Countrywide is now a party or by which it is bound, or constitute a material default or result in an acceleration under any of the foregoing, or result in the violation of any material law, rule, regulation, order, judgment or decree to which Countrywide or its property is subject;

(d)    Approved Seller. Countrywide is an approved seller/servicer for each Agency in good standing and is a mortgagee approved by the Secretary of HUD, with facilities, procedures, and personnel necessary for the servicing of mortgage loans. No event has occurred, including without limitation, a change in insurance coverage, which would make Countrywide unable to comply with Fannie Mae, Freddie Mac or HUD eligibility requirements;

(e)    No Pending Litigation. There is no action, suit, proceeding, investigation or litigation pending or, to Countrywide's knowledge, threatened, which either in any one instance or in the aggregate, if determined adversely to Countrywide would materially and adversely affect the sale of the Mortgage Loans to the Purchaser, the ability of Countrywide to service the Mortgage Loans hereunder in accordance with the terms hereof, or Countrywide's ability to perform its obligations under this Agreement;

(f)    No Consent Required. No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by Countrywide, of or compliance by Countrywide with, this Agreement or the consummation of the transactions contemplated by this Agreement, or if required, such consent, approval, authorization or order has been obtained prior to the related Closing Date;

(g)    No Untrue Statements. Neither this Agreement nor any Transaction Document, nor any statement therein contains any untrue statement of fact or omits to state a fact necessary to make the statements contained herein or therein not misleading. The transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by Countrywide, pursuant to this Agreement, are not subject to the bulk transfer or any similar statutory provisions in effect in any applicable jurisdiction;

(h)    Performance. Countrywide does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement and each Transaction Document. Countrywide is solvent, and the sale of the

-15-

Mortgage Loans will not cause Countrywide to become insolvent. The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of Countrywide's creditors;

(i)  Servicing Fee. Countrywide acknowledges and agrees that the Servicing Fee, as calculated at the Servicing Fee Rate, represents reasonable compensation for performing such services and that the entire Servicing Fee shall be treated by Countrywide, for accounting and tax purposes, as compensation for the servicing and administration of the Mortgage Loans pursuant to this Agreement; and

(j)  Financial Statements. All consolidated financial statements pertaining to Countrywide's last three complete fiscal years, from the date of this Agreement, fairly present the pertinent results of operations and changes in consolidated financial position for each of such periods and the consolidated financial position at the end of each such period.

**Section 3.2.  Representations and Warranties Regarding Individual Mortgage Loans.** With respect to each Mortgage Loan (unless otherwise specified below), Countrywide represents and warrants to the Purchaser as of the related Closing Date that:

(a)  Mortgage Loan Schedule. The information contained in the Mortgage Loan Schedule, Credit File, and the Purchase Confirmation is complete, true and correct in all material respects; provided, however, with respect to any mortgagor's debt to income ratio information provided to Countrywide, such information is complete, true and correct to the best of Countrywide's knowledge after reasonable inquiry;

(b)  No Delinquencies or Advances. All payments required to be made prior to the related Cut-off Date for such Mortgage Loan under the terms of the Mortgage Note have been made; Countrywide has not advanced funds, or induced, solicited or knowingly received any advance of funds from a party other than the owner of the Mortgaged Property subject to the Mortgage, directly or indirectly, for the payment of any amount required by the Mortgage Loan; and there has been no delinquency of thirty (30) days or more in any payment by the Mortgagor thereunder during the last twelve (12) months; the Mortgagor has made at least one Monthly Payment on the related Mortgage Note;

(c)  Taxes, Assessments, Insurance Premiums and Other Charges. There are no delinquent taxes, ground rents, water charges, sewer rents, assessments, insurance premiums, leasehold payments, including assessments payable in future installments or other outstanding charges affecting the related Mortgaged Property;

(d)  No Modifications. The terms of the Mortgage Note and the Mortgage have not been impaired, waived, altered or modified in any respect, except by written instruments that have been or will be recorded, if necessary to protect the interests of the Purchaser, and that have been or will be delivered to the Purchaser, all in accordance with this Agreement. The substance of any such waiver, alteration or modification has been approved by the primary mortgage guaranty insurer, if any, and by the title insurer, to the extent required by the related policy and its terms are reflected on the Mortgage Loan Schedule. No Mortgagor has been released, in whole or in part, except in connection with an assumption agreement approved by the primary mortgage insurer, if any, and the title insurer, to the extent required by the policy, and which assumption agreement is part of the Collateral File and the terms of which are reflected in the Mortgage Loan Schedule if executed prior to the Closing Date;

-16-

(e) <u>No Defenses</u>. The Mortgage Note and the Mortgage are not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of the Mortgage Note and the Mortgage, or the exercise of any right thereunder, render the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto;

(f) <u>Hazard and Flood Insurance</u>. All buildings upon the Mortgaged Property are insured by an insurer acceptable to Fannie Mae against loss by fire, hazards of extended coverage and such other hazards as are customary in the area where the Mortgaged Property is located, and such insurer is licensed to do business in the state where the Mortgaged Property is located. All such insurance policies contain a standard mortgagee clause naming Countrywide, its successors and assigns as mortgagee, and all premiums thereon have been paid. If, upon the origination of the Mortgage Loan, the Mortgaged Property was, or was subsequently deemed to be, in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available), a flood insurance policy that meets the requirements of the current guidelines of the Federal Insurance Administration (or any successor thereto) and conforms to the requirements of Fannie Mae is in effect. The Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's expense and, upon the failure of the Mortgagor to do so, the holder of the Mortgage is authorized to maintain such insurance at the Mortgagor's expense and to seek reimbursement therefor from the Mortgagor; Countrywide has not acted or failed to act so as to impair the coverage of any such insurance policy or the validity, binding effect, or enforceability thereof;

(g) <u>Compliance with Applicable Law</u>. Each Mortgage Loan complies in all material respects with applicable state and federal laws including, without limitation, truth in lending, real estate settlement procedures, consumer credit protection, equal credit opportunity and disclosure laws applicable to the Mortgage Loan;

(h) <u>No Release of Mortgage</u>. The Mortgage has not been satisfied, canceled, subordinated, or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission;

(i) <u>Enforceability of Mortgage Documents</u>. The Mortgage Note and the related Mortgage are genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms, except as the enforceability thereof may be limited by bankruptcy, insolvency, reorganization or similar laws. All parties to the Mortgage Note and the related Mortgage had legal capacity to execute such documents, and the Mortgage Note and the related Mortgage have been duly and properly executed;

(j) <u>Validity of Mortgage</u>. The Mortgage is a valid, existing and enforceable first lien on the Mortgaged Property, including all improvements on the Mortgaged Property, subject only to (i) the lien of current real property taxes and assessments not yet due and payable; (ii) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording that are acceptable to mortgage lending institutions generally and specifically referred to in lender's title insurance policy delivered to the originator of the Mortgage Loan and that do not adversely affect the Appraised Value (as

-17-

evidenced by an appraisal referred to in such definition) of the Mortgaged Property; and (iii) other matters to which like properties are commonly subject that do not materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of the related Mortgaged Property. Each Mortgaged Property is owned by the Mortgagor in fee simple (except with respect to common areas in the case of condominiums, PUDs, and de minimus PUDs) or by a leasehold for a term of at least five (5) years longer than the term of the related Mortgage;

(k)   Disbursements of Proceeds. The proceeds of the Mortgage Loan have been fully disbursed, and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and expenses incurred in making or closing the Mortgage Loan and recording the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage;

(l)   Sole Owner. Countrywide is the sole owner and holder of the Mortgage Loan. The Mortgage Loan is not assigned or pledged, and Countrywide has good and marketable title thereto, and has full right to transfer and sell the Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, lien, pledge, charge, claim or security interest not specifically set forth in the related Mortgage Loan Schedule and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan pursuant to the terms of this Agreement;

(m)   Title Insurance. Each Mortgage Loan secured by a first priority Mortgage is covered by an ALTA or equivalent lender's title insurance policy acceptable to Fannie Mae, issued by a title insurer acceptable to Fannie Mae and qualified to do business in the jurisdiction where the related Mortgaged Property is located, insuring (subject to the exceptions contained in Section 3.2(j)(i), (ii) and (iii) above) Countrywide, its successors and assigns as to the first priority lien of the Mortgage, as applicable. Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein. Countrywide is the sole insured of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and no prior holder of the related Mortgage, including Countrywide, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy;

(n)   No Default. There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and Countrywide has not waived any default, breach, violation or event of acceleration. To the best of Countrywide's knowledge, no litigation affecting a Mortgage Loan is pending; provided however, if there is pending litigation affecting the value of a Mortgage Loan, regardless of Countrywide's lack of knowledge, Countrywide shall repurchase such Mortgage Loan;

(o)   No Mechanics' Liens. There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that

under law could give rise to such lien) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage;

       (p)    Origination, Servicing, and Collection Practices. Each Mortgage Loan was originated by a credit union, a savings and loan association, a savings bank, a commercial bank, or a similar institution which is supervised and examined by a federal or state authority, or by a mortgagee approved as such by the Secretary of HUD, pursuant to Sections 203 and 211 of the National Housing Act. The origination, servicing, and collection practices used by Countrywide with respect to each Mortgage Note and Mortgage have been in all respects legal, proper, prudent and customary in the mortgage origination and servicing business. With respect to escrow deposits and Escrow Payments, if any, all such payments are in the possession of, or under the control of, Countrywide and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits or Escrow Payments or other charges or payments due Countrywide have been capitalized under any Mortgage or the related Mortgage Note. With respect to Adjustable Rate Mortgage Loans, all Mortgage Interest Rate adjustments have been made in strict compliance with state and federal law and the terms of the related Mortgage Note. Any interest required to be paid pursuant to state and local law has been properly paid and credited;

       (q)    No Condemnation or Damage. To the best of Countrywide's knowledge, the Mortgaged Property is free of material damage and waste and there is no proceeding pending for the total or partial condemnation thereof. There is no action or proceeding directly involving any Mortgaged Property of which Countrywide is aware in which compliance with any environmental law, rule, or regulation is an issue;

       (r)    Customary and Enforceable Provisions. The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby including (a) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (b) otherwise by judicial foreclosure. The Mortgage contains customary and enforceable provisions for the acceleration of the principal balance of such Mortgage Loan in the event the related Mortgaged Property is sold or otherwise transferred without the prior consent of the Mortgagee. There is no homestead or other exemption available to the Mortgagor which would interfere with the Mortgagee's right to sell the Mortgaged Property at a trustee's sale, or the right to foreclose the Mortgage;

       (s)    Collateral. The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage;

       (t)    Appraisal. The Credit File contains an appraisal of the related Mortgaged Property signed prior to the approval of the Mortgage Loan application by an appraiser who meets the minimum requisite qualifications of Fannie Mae for appraisers, duly appointed by the originator, that had no interest, direct or indirect in the Mortgaged Property, and whose compensation is not affected by the approval or disapproval of the Mortgage Loan; the appraisal is in a form acceptable to Fannie Mae, with such riders as are acceptable to such Agency. The appraisal report and the appraiser both satisfy the requirements of Title XI of the Federal Institutions Reform, Recovery and Enforcement Act of 1989, and the regulations promulgated thereunder and in effect on the date the Mortgage Loan was originated;

(u)     Trustee for Deed of Trust.  In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor;

(v)     Private Mortgage Insurance.  No Mortgage Loan has a LTV in excess of ninety-five percent (95%).  Each Conventional Mortgage Loan with an LTV at origination in excess of eighty percent (80%) is and will be subject to a PMI Policy, which insures that portion of the Mortgage Loan over seventy-five percent (75%) of the Appraised Value of the related Mortgaged Property, or as otherwise required by law.  All provisions of such PMI Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid.  The PMI Policy is issued by an insurer licensed to do business in the state in which such Mortgaged Property is located and is acceptable to Fannie Mae.  Any Mortgage subject to any such PMI Policy obligates the Mortgagor thereunder to maintain such insurance and to pay all premiums and charges in connection therewith;

(w)     Lawfully Occupied.  To the best of Countrywide's knowledge, the Mortgaged Property is lawfully occupied under applicable law.  To the best of Countrywide's knowledge, all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same including certificates of occupancy, have been made or obtained from the appropriate authorities.  To the best of Countrywide's knowledge, all of the improvements which were included for the purpose of determining the Appraised Value of the Mortgaged Property were completed at the time that such Mortgage Loan was originated and lie wholly within the boundaries and building restriction lines of such Mortgaged Property.  No improvements on adjoining properties encroach upon the Mortgaged Property;

(x)     Assignment of Mortgage.  Except for the absence of recording information, the Assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located;

(y)     Consolidation of Future Advances.  Any future advances made to the Mortgagor prior to the Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term.  The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan;

(z)     Form of Mortgage Note and Mortgage.  The Mortgage Note and Mortgage are on forms acceptable to Fannie Mae;

(aa)     Mortgaged Property.  The Mortgaged Property consists of a parcel of real property upon which is erected a one to four-family dwelling, or an individual condominium unit in a low-rise condominium or an individual unit in a planned unit development, provided however, that any condominium unit or planned unit development shall conform with the applicable Agency requirements regarding such dwellings;

(bb)     Servicemembers Civil Relief Act.  The Mortgagor has not notified Countrywide, and Countrywide has no knowledge of any relief requested or allowed to the Mortgagor under the Servicemembers Civil Relief Act of 2003;

(cc)    No Bankruptcy.  No Mortgage Loan is subject to any pending bankruptcy, insolvency, or reorganization;

(dd)    Primary Residence.  At origination, the Mortgagor represented that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence;

(ee)    Tax Service.  Each Mortgage Loan is covered by a valid transferable tax service contract;

(ff)    No Fraud.  There has been no fraud that has been committed by Countrywide in connection with the origination of the Mortgage Loans and, to the best of Countrywide's knowledge, no such fraud was committed on the part of the Mortgagor, any mortgagee, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or in connection with the sale of such Mortgage Loan;

(gg)    Cooperative Loan.  With respect to each Cooperative Loan (i) there is no provision in the related proprietary lease which requires the Mortgagor to offer for sale the shares owned by such Mortgagor first to the Cooperative for a price less than the outstanding amount of the Cooperative Loan, and (ii) there is no prohibition in the related proprietary lease against pledging such shares or assigning the proprietary lease that has been violated in connection with the origination of the Cooperative Loan;

(hh)    Flood Insurance for Cooperative.  With respect to each Cooperative Loan, as of the closing of such Cooperative Loan, the Company obtained evidence that, if the Cooperative Building is in a federally designated flood area, a flood insurance policy has been obtained in an amount equal to at least that required by applicable law, which insurance the Cooperative is obligated to maintain at the Cooperative's cost and expense;

(ii)    Cooperative Status.  With respect to each Cooperative Loan, such Cooperative Loan is secured by shares held by a "tenant-stockholder" of a corporation that qualifies as a "cooperative housing corporation" as such terms are defined in Section 216(b)(1) of the Code, as amended, and to the best of the Countrywide's knowledge, no Cooperative is subject to proceedings which would, if adversely determined, result in such Cooperative losing its status as a "cooperative housing corporation" under Section 216(b)(1) of the Code, as amended; and

(jj)    Cooperative Lien.  With respect to each Cooperative Loan, the related Mortgage and Uniform Commercial Code Financing Statement creates a first-priority security interest in the stock in the Cooperative and the related proprietary lease of the related Cooperative Unit which were pledged to secure such Cooperative Loan, and the Cooperative owns the Cooperative Building as an estate in fee simple in real property or pursuant to a leasehold acceptable to Fannie Mae;

(kk)    Predatory Lending Regulations; High Cost Loans.  The Mortgage Loan is not (a) subject 12 CFR Part 226.32 of Regulation Z, the regulation implementing TILA, which implements the Home Ownership and Equity Protection Act of 1994, as amended, (b) a "High Cost Loan" or "Covered Loan" as applicable, as such terms aredefined in the current Standard & Poor's LEVELS® Glossary in effect on the related Closing Date, which is now Version 5.6c Revised, Appendix E, or (c) defined as a "high cost loan" or similarly defined loan under any other state, federal or local law related to anti-predatory and abusive lending; and

(ll)     Credit Reports. With respect to each Mortgage Loan, Countrywide has furnished information on the related borrower credit files on a monthly basis to Equifax, Experian and Trans Union Credit Information Company, in accordance with the Fair Credit Reporting Act and its implementing regulations.

### Section 3.3. Remedies for Breach of Representations and Warranties.

(a)     Notice of Breach. The representations and warranties set forth in Sections 3.1 and 3.2 shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or failure to examine any Collateral Documents or Credit File. Upon discovery by either Countrywide or the Purchaser of a breach of any of the foregoing representations and warranties that materially and adversely affects the value of one or more of the related Mortgage Loans, the party discovering such breach shall give prompt written notice to the other.

(b)     Cure. Within ninety (90) days from the earlier of either discovery by or notice to Countrywide of a breach of a representation or warranty that materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans, Countrywide shall use its best efforts to cure such breach in all material respects, and, if such breach cannot be cured, Countrywide shall, at the Purchaser's option, repurchase such Mortgage Loan at the Repurchase Price. In the event that a breach shall involve any representation or warranty set forth in Section 3.1 and such breach cannot be cured within ninety (90) days of the earlier of either discovery by or notice to Countrywide of such breach, all of the Mortgage Loans shall, at the Purchaser's option, be repurchased by Countrywide at the Repurchase Price.

(c)     Repurchase. If the breach shall involve a representation or warranty set forth in Section 3.2, Countrywide may, rather than repurchase the Mortgage Loan as provided above, remove such Mortgage Loan and substitute in its place a Qualified Substitute Mortgage Loan or Loans reasonably acceptable to the Purchaser. If Countrywide has no Qualified Substitute Mortgage Loan, it shall repurchase the deficient Mortgage Loan. Any repurchase of a Mortgage Loan(s) pursuant to the provisions of this Section 3.3 shall be accomplished by deposit in the Custodial Account of the amount of the Repurchase Price for distribution to the Purchaser on the next scheduled Remittance Date, after deducting therefrom any amount received in respect of such repurchased Mortgage Loan or Loans and being held in the Custodial Account for future distribution. At the time of repurchase or substitution, the Purchaser and Countrywide shall arrange for the reassignment of such Mortgage Loan and release of the related Collateral File to Countrywide and the delivery to Countrywide of any documents held by the Purchaser or its designee relating to such Mortgage Loan. In the event Countrywide determines to substitute a Qualified Substitute Mortgage Loan for a repurchased Mortgage Loan, Countrywide shall, simultaneously with such reassignment, give written notice to the Purchaser that substitution has taken place and identify the Qualified Substitute Mortgage Loan(s). In connection with any such substitution, Countrywide shall be deemed to have made as to such Qualified Substitute Mortgage Loan(s) the representations and warranties except that all such representations and warranties set forth in this Agreement shall be deemed made as of the date of such substitution. Countrywide shall effect such substitution by delivering to the Purchaser the Collateral Documents for such Qualified Substitute Mortgage Loan(s). Countrywide shall deposit in the Custodial Account the Monthly Payment less the Servicing Fee due on such Qualified Substitute Mortgage Loan(s) in the month following the date of such substitution. Monthly Payments due with respect to Qualified Substitute Mortgage Loans in the

-22-

month of substitution shall be retained by Countrywide. For the month of substitution, distributions to the Purchaser shall include the Monthly Payment due on any substituted Mortgage Loan in the month of substitution, and Countrywide shall thereafter be entitled to retain all amounts subsequently received by Countrywide in respect of such substituted Mortgage Loan.

For any month in which Countrywide substitutes a Qualified Substitute Mortgage Loan for a repurchased Mortgage Loan, Countrywide shall determine the amount (if any) by which the aggregate principal balance of all Qualified Substitute Mortgage Loans as of the date of substitution is less than the aggregate Stated Principal Balance of all substituted Mortgage Loans (after application of scheduled principal payments due in the month of substitution). The amount of such shortfall shall be distributed by Countrywide in the month of substitution pursuant to Section 5.1. Accordingly, on the date of such substitution, Countrywide shall deposit from its own funds into the Custodial Account an amount equal to the amount of such shortfall.

Countrywide shall pay all costs and expenses incurred in connection with the repurchase of or substitution with a Qualified Substitute Mortgage Loan, or cure of a breach or a representation or warranty.

(d)    Indemnification. In addition to its cure, repurchase and substitution obligations, Countrywide shall indemnify the Purchaser and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from a breach of Countrywide's representations and warranties contained in Sections 3.1 and 3.2 that materially and adversely affects the value of one or more of the Mortgage Loans. The obligations of Countrywide set forth in this Section 3.3 to cure, substitute for or repurchase a defective Mortgage Loan and to indemnify the Purchaser as provided in this Section 3.3 constitute the sole remedies of the Purchaser with respect to a breach of the foregoing representations and warranties.

(e)    Accrual of Cause of Action. Any cause of action against Countrywide relating to or arising out of the breach of any representations and warranties made in Sections 3.1 or 3.2 shall accrue as to any Mortgage Loan upon (i) discovery of such breach by the Purchaser or notice thereof by Countrywide to the Purchaser, (ii) failure by Countrywide to cure such breach or repurchase such Mortgage Loan as specified above, and (iii) demand upon Countrywide by the Purchaser for compliance with the relevant provisions of this Agreement.

Section 3.4. Repurchase of Convertible Mortgage Loans. In the event a Mortgagor exercises the option to convert a Convertible Mortgage Loan to a Fixed Rate Mortgage Loan in accordance with the terms of the related Mortgage Note, Countrywide shall repurchase such Convertible Mortgage Loan within thirty (30) days of such conversion taking effect at a price equal to one hundred percent (100%) of the unpaid principal balance of such Convertible Mortgage Loan at the time of such conversion plus accrued interest thereon through the last day of the month of repurchase at the Mortgage Loan Remittance Rate; provided, however, no interest shall be due and payable if a Convertible Mortgage Loan is repurchased on the first day of a month. Any repurchase of a Convertible Mortgage Loan(s) pursuant to the foregoing provisions of this Section 3.4 shall be accomplished by deposit in the Custodial Account of the amount of said repurchase price for distribution to the Purchaser on the next scheduled Remittance Date.

-23-