The following documents relating to a Cooperative Loan, if applicable:

1.  The original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of _____ without recourse" and signed in the name of the Countrywide by an authorized officer (in the event that the Mortgage Loan was acquired by Countrywide in a merger, the signature must be in the following form: "[Countrywide], successor by merger to [name of predecessor]"; in the event that the Mortgage Loan was acquired or originated by Countrywide while doing business under another name, the signature, must be in the following form: "[Countrywide], formerly known as [previous name]").

2.  The original Cooperative Security Agreement entered into by the Mortgagor with respect to such Cooperative Loan.

3.  UCC-3 assignment in blank (or equivalent instrument), sufficient under the laws of the jurisdiction where the related Mortgaged Property is located to reflect of record the sale and assignment of the Mortgage Loans to the Purchaser.

4.  Original assignment of the Cooperative Security Agreement in blank showing a chain of assignment from the originator of the related Cooperative Loan to Countrywide.

5.  Original Form UCC-1 and any continuation statements with evidence of filing thereon with respect to such Cooperative Loan.

6.  Stock certificate representing the stock allocated to the related dwelling unit in the related residential cooperative housing corporation and pledged by the related Mortgagor to the originator of such Cooperative Loan with a stock power in blank attached.

7.  Original proprietary lease.

8.  Original assignment of proprietary lease, in blank, and all intervening assignments thereof.

9.  Original recognition agreement of the interests of the mortgagee with respect to the Cooperative Loan by the residential cooperative housing corporation, the stock of which was pledged by the related Mortgagor to the originator of such Cooperative Loan.

10. Original assignment of recognition agreement in blank, and all intervening assignments thereof.

11. Originals of any assumption, consolidation or modification agreements relating to any of the items specified in (A) through (F) above with respect to such Cooperative Loan.

A-3

**EXHIBIT B**

FORM OF PURCHASE CONFIRMATION

[COUNTRYWIDE LETTERHEAD]

[DATE]

**[PURCHASER]**
[STREET ADDRESS]
[CITY, STATE AND ZIP]
Attn: [CONTACT, TITLE]

Re:   Purchase Confirmation

Gentlemen and Ladies:

This purchase confirmation (the "Purchase Confirmation") between Countrywide Home Loans, Inc. ("Countrywide") and [PURCHASER] (the "Purchaser") sets forth our agreement pursuant to which the Purchaser is purchasing, and Countrywide is selling, on a servicing-retained basis, those certain mortgage loans identified in Exhibit A hereto and more particularly described herein (the "Mortgage Loans").

The purchase, sale and servicing of the Mortgage Loans as contemplated herein shall be governed by that certain Mortgage Loan Purchase and Servicing Agreement dated as of [DATE], between Countrywide and the Purchaser (as amended herein and otherwise, the "Agreement"). By executing this Purchase Confirmation, each of Countrywide and the Purchaser again makes, with respect to itself and each Mortgage Loan, as applicable, all of the covenants, representations and warranties made by each such party in the Agreement, except as the same may be amended by this Purchase Confirmation.

All exhibits hereto are incorporated herein in their entirety. In the event there exists any inconsistency between the Agreement and this Purchase Confirmation, the latter shall be controlling notwithstanding anything contained in the Agreement to the contrary. All capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Agreement.

1.  Assignment and Conveyance of Mortgage Loans. Upon the Purchaser's payment of the Purchase Proceeds in accordance with Section 2.8 of the Agreement, Countrywide shall sell, transfer, assign and convey to the Purchaser, without recourse, but subject to the terms of the Purchase Confirmation and the Agreement, all of the right, title and interest of Countrywide in and to the Mortgage Loans, excluding the servicing rights relating thereto. Each Mortgage Loan shall be serviced by Countrywide pursuant to the terms of the Agreement.

2.  Defined Terms. As used in the Agreement, the following defined terms shall have meanings set forth below.

B-1

a. Closing Date: [DATE].

[b. Index: On each Interest Adjustment Date, the applicable index rate shall be a rate per annum equal to [the weekly average yield on U.S. Treasury securities adjusted to a constant maturity of one year, as published by the Board of Governors of the Federal Reserve System in Statistical Release No. H.15] [the average of interbank offered rates for six-month U.S. dollar denominated deposits in the London market (LIBOR), as published [in the Wall Street Journal] [by Fannie Mae] [the 11th District Cost of Funds as made available by the Federal Home Loan Bank] [the weekly average yield on certificates of deposit adjusted to a constant maturity of six months as published by the Board of Governors of the Federal Reserve System in Statistical Release No. H.15 or a similar publication]. ]

[c. Missing Credit Documents: As set forth in Exhibit [B] hereto.]

[d. Pending Mortgage Loans: As set forth in Exhibit [C] hereto.]

e. Purchase Proceeds: With respect to [the Mortgage Loans] [each Mortgage Loan] [the Mortgage Loans in each Segment], and as set forth in Exhibit [A] hereto, the sum of (a) the product of (i) the Cut-off Date Balance of [such Mortgage Loan] [such Mortgage Loans] [such Segment], and (ii) the purchase price percentage set forth in Exhibit [A] hereto for such [Mortgage Loan] [Mortgage Loans] [Segment], and (b) accrued interest from the Cut-off Date through the day prior to the Closing Date, inclusive.

f. Servicing Fee Rate: [0.25%] [0.375%] [With respect to the period prior to the initial Interest Adjustment Date, [0.25]% and, thereafter, [0.375]%].

3. Description of Mortgage Loans: Each Mortgage Loan complies with the specifications set forth below in all material respects.

a. Loan Type: Each Mortgage Loan is a [Conventional] [Government] Mortgage Loan and a [Adjustable Rate] [Balloon] [Convertible] [Fixed Rate] Mortgage Loan.

b. Lien Position: Each Mortgage Loan is secured by a perfected [first] [second] lien Mortgage.

c. Underwriting Criteria: Each Mortgage Loan [was underwritten generally in accordance with the Seller's credit underwriting guidelines in effect at the time such Mortgage Loan was originated] [conforms to the Fannie Mae or Freddie Mac mortgage eligibility criteria (as such criteria applies to Countrywide) and is eligible for sale to, and securitization by, Fannie Mae or Freddie Mac] [conforms in all material respects to the GNMA mortgage eligibility criteria and is eligible for sale and securitization into a GNMA mortgage-backed security] [at the time of origination was underwritten to guidelines which are consistent with an institutional investor-quality mortgage loan].

Kindly acknowledge your agreement to the terms of this Purchase Confirmation by signing in the appropriate space below and returning this Purchase Confirmation to the undersigned. Telecopy signatures shall be deemed valid and binding to the same extent as the original.

B-2

COUNTRYWIDE HOME LOANS, INC.          [PURCHASER]

By: _____     By: _____
    Michael W. Schloessmann              Name:
    Vice President                       Title:

**Exhibit A**
**to**
**Purchase Confirmation**

Mortgage Loan Schedule

(attached)

**Exhibit B**
**to**
**Purchase Confirmation**

Calculation of Purchase Proceeds

(attached)

## EXHIBIT C

### TRANSMITTAL/BAILEE LETTER
[Countrywide Letterhead]

LaSalle Bank, National Association
1842 Barranca Parkway
Irvine, California 92606

Re:   Sale of Mortgage Loans pursuant to that certain Mortgage Loan Purchase and
      Servicing Agreement dated September ___, 2005 and Purchase Conformation
      Dated [DATE] (collectively, the "Agreement")

Ladies and Gentlemen:

In connection with the sale of mortgage loans contemplated in the Agreement,
Countrywide Home Loans, Inc. ("Countrywide") will deliver certain legal documents as
delineated on Exhibit A hereto (collectively, the "Mortgage Documents") relating to
those mortgage loans (collectively, the "Mortgage Loans") listed on the schedule attached
hererto as Exhibit B, which Mortgage Loans are owned by Countywide and which are
subject to the impending sale of the same to Thornburg Mortgage Home Loans, Inc.
("Thornburg"), and which are being delivered pursuant to this bailee agreement to
LaSalle Bank, National Association ("Custodian"). Custodian shall hold possession of
the Mortgage Documents as custodian, agent, and bailee for and on behalf of
Countrywide and shall act only in accordance with written instructions of Countrywide.

Until Countrywide's receipt of the Purchase Price, Countrywide's right, title, and interest
in the Mortgage Loans shall remain in full force and effect.  Countrywide hereby agrees
that, upon receipt by Countrywide of the Purchase Price (as defined in the Agreement) as
to each Mortgage Loan, Countrywide releases all right, interest or lien of any kind it may
have with respect to each such Mortgage Loan to Thornburg.  Thornburg shall remit the
Purchase Price by wire transfer to the following account:

    WIRE INSTRUCTIONS:

    Bank Name: Bank of New York
    City, State
                ABA #: 021000018
                Account #: 8900038632

    Account Name: COUNTRYWIDE HOME LOANS, INC.
    Attention: PAUL WOMBLE - THORNBURG

Upon receipt by Countrywide of the Purchase Price, Countrywide shall promptly send
written confirmation of such receipt of the Purchase Price to the Custodian.  In the event
that any Mortgage Loan is not purchased by Thornburg, Custodian shall promptly return

the Mortgage Documents relating to such Mortgage Loan, at Thornburg's expense, directly to Countrywide at the address set forth below or as otherwise directed by Countrywide in writing.

NOTE: BY ACCEPTING THE MORTGAGE LOANS DELIVERED TO YOU WITH THIS LETTER, YOU CONSENT TO BE THE CUSTODIAN, AGENT AND BAILEE FOR COUNTRYWIDE ON THE TERMS DESCRIBED IN THIS LETTER. THE UNDERSIGNED REQUESTS THAT YOU ACKNOWLEDGE RECEIPT OF THE ENCLOSED MORTGAGE DOCUMENTS RELATING TO THE MORTGAGE LOANS AND THIS LETTER BY SIGNING AND RETURNING THE ENCLOSED COPY OF THIS LETTER TO THE UNDERSIGNED; HOWEVER, YOUR FAILURE TO DO SO DOES NOT NULLIFY SUCH CONSENT.

Very truly yours,

COUNTRYWIDE HOME LOANS, INC.


By: _____
    Lynn Sumner
    Vice President

       Address:    4500 Park Granada
                   Calabasas, California 91302


AGREED TO AND ACCEPTED:

LASALLE BANK, NATIONAL ASSOCIATION
Custodian


By:
    Name:
    Title:

Date: _____


ACKNOWLEDGED:

THORNBURG MORTGAGE HOME LOANS, INC.


By:
    Name:
    Title:

## Exhibit A

### To the Transmittal/Bailee Letter

### COLLATERAL DOCUMENTS

1. Mortgage Note: The original Mortgage Note (or a lost note affidavit, subject to the Purchaser's reasonable consent, in a form acceptable to Fannie Mae) bearing all intervening endorsements, endorsed "Pay to the order of _____, without recourse" and signed in the name of Countrywide by an authorized officer (in the event that the Mortgage Loan was acquired by Countrywide in a merger, the signature must be in the following form: "[Countrywide], successor by merger to [name of predecessor]"; in the event that the Mortgage Loan was acquired or originated by Countrywide while doing business under another name, the signature, must be in the following form: "[Countrywide], formerly known as [previous name]").

2. Assignment of Mortgage: The original Assignment of Mortgage in blank (in the event that the Mortgage Loan was acquired by Countrywide in a merger, the signature must be in the following form: "[Countrywide], successor by merger to [name of predecessor]"; in the event that the Mortgage Loan was acquired or originated while doing business under another name, the signature must be in the following form: "[Countrywide], formerly known as [previous name]"), except in the case of such Mortgage Loan that has been originated in the name of or assigned to MERS and registered under the MERS System.

3. Guarantee: The original of any guarantee executed in connection with the Mortgage Note.

4. Mortgage: The original Mortgage with evidence of recording thereon or, if such original Mortgage has not been returned to Countrywide on or prior to the Closing Date by the public recording office where such Mortgage has been delivered for recordation, a copy of such Mortgage certified by Countrywide to be a true and complete copy of the original Mortgage sent for recordation; with respect to MERS Loans, (a) the Mortgage names MERS as the mortgagee.

5. Modifications: The originals of all assumption, modification, consolidation or extension agreements, with evidence of recording thereon, if any.

6. Intervening Assignments: The originals of all intervening assignments of Mortgage with evidence of recording thereon, provided that such originals have been returned to Countrywide by the public recording office where such intervening assignment of Mortgage has been delivered for recordation, or a copy thereof certified by Countrywide to be a true and correct copy of the original that has been delivered to a recording office.

7. Title Policy: The original mortgagee title insurance policy (or the equivalent thereof with respect to any Mortgage Loan in which the related Mortgaged Property is located in a jurisdiction where such title insurance is not customarily provided) if such title insurance

policy has been issued by the related title company on or prior to the Closing Date or, if the title insurance policy has not been issued, a copy of the title commitment.

8.    If applicable, the original of any security agreement, chattel mortgage or equivalent document executed in connection with the Mortgage Loan.

9.    If any of the above documents has been executed by a person holding a power of attorney, an original of such power of attorney with evidence of recording thereon or a copy thereof, certified by Countrywide to be true and correct copy of the original that has been delivered to the appropriate recording office.

The following documents relating to a Cooperative Loan, if applicable:

A.    The original Mortgage Note bearing all intervening endorsements, endorsed "Pay to the order of _____ without recourse" and signed in the name of the Countrywide by an authorized officer (in the event that the Mortgage Loan was acquired by Countrywide in a merger, the signature must be in the following form: "[Countrywide], successor by merger to [name of predecessor]"; in the event that the Mortgage Loan was acquired or originated by Countrywide while doing business under another name, the signature, must be in the following form: "[Countrywide], formerly known as [previous name]").

B.    The original Cooperative Security Agreement entered into by the Mortgagor with respect to such Cooperative Loan.

C.    UCC-3 assignment in blank (or equivalent instrument), sufficient under the laws of the jurisdiction where the related Mortgaged Property is located to reflect of record the sale and assignment of the Mortgage Loans to the Purchaser.

D.    Original assignment of the Cooperative Security Agreement in blank showing a chain of assignment from the originator of the related Cooperative Loan to Countrywide.

E.    Original Form UCC-1 and any continuation statements with evidence of filing thereon with respect to such Cooperative Loan.

F.    Stock certificate representing the stock allocated to the related dwelling unit in the related residential cooperative housing corporation and pledged by the related Mortgagor to the originator of such Cooperative Loan with a stock power in blank attached.

G.    Original proprietary lease.

H.    Original assignment of proprietary lease, in blank, and all intervening assignments thereof.

I.    Original recognition agreement of the interests of the mortgagee with respect to the Cooperative Loan by the residential cooperative housing corporation, the stock of which was pledged by the related Mortgagor to the originator of such Cooperative Loan.

J.    Original assignment of recognition agreement in blank, and all intervening assignments thereof.

K.    Originals of any assumption, consolidation or modification agreements relating to any of the items specified in (A) through (F) above with respect to such Cooperative Loan.

**Exhibit B**

**To the Transmittal/Bailee Letter**

List of Mortgage Loans

(attached)

## EXHIBIT D

### MORTGAGE LOAN SCHEDULE

Note: If field or fields are blank, the status is "N
for "No" or "not applicable."

1.   Mortgage Loan Number
2.   Servicer Loan Number (if different from #1 above)
3.   Mortgagor's Last Name, First Name, and Middle Initial
4.   Current Interest Rate
5.   Current Principal Balance
6.   Current Monthly Principal and Interest Payment
7.   Next Payment Change Date
8.   Next Rate Change Date
9.   Actual Interest Paid To Date
10.  Scheduled Principal Balance
11.  Originator Name
12.  Product Type
13.  Documentation Type (full, alternative, reduced)
14.  Occupancy Code (owner occupied, secondary residence or investment)
15.  Property Type (single family, 2-4 family)
16.  Loan Purpose Code
17.  Private Mortgage Insurance (Y/N)
18.  Servicing Fee Rate
19.  Property Sales Price
20.  Appraised Value
21.  Property Street Address, City, County, State, and Zip Code
22.  Interest Adjustment Frequency
23.  Payment Adjustment Frequency
24.  Negative Amortization Maximum (if applicable)
25.  Index Conversion Option (Y/N)
26.  Interest Only (Y/N)
27.  Term of Interest Only Period
28.  Prepayment Penalty (Y/N)
29.  Prepayment Penalty Term
30.  Original Interest Rate
31.  Original Principal Balance
32.  Margin
33.  First Adjustment Cap
34.  Subsequent Adjustment Cap
35.  Lifetime Interest Rate Cap
36.  Interest Rate Floor (if different than Margin)
37.  Original Principal and Interest Payment
38.  Term
39.  Origination Date
40.  First Payment Due Date
41.  First Interest Adjustment Date
42.  Maturity Date

43. Period Payment Cap (if applicable)
44. Assumption Flag (Y/N)
45. Balloon Flag (Y/N)
46. Private Mortgage Insurance Coverage
47. Private Mortgage Insurer Company Name
48. Private Mortgage Insurance Certificate Number
49. Buydown (Y/N)
50. Number of Units
51. MERS Loan Flag
52. MERS Identification Number, if applicable
53. FICOSCORE-B
54. Original Loan to Value Ratio
55. Original Cumulative Loan to Value Ratio
56. Debt-to-Income Ratio
57. LPMI Flag (Y/N)
58. Single Premium Credit Insurance (Y/N)
59. GPM (Y/N)
60. Shared Appreciation Loan (Y/N)
61. Index
62. Prepayment Penalty Percent
63. Rounding Factor
64. Lookback Period
65. FICO Score Coborrower
66. Asset Verification (Y or N)
67. Appraisal Type

## EXHIBIT E

### CREDIT FILE

Each Credit File shall include the documents identified below, to the extent so required under the applicable loan program under which the Mortgage Loan was originated.

1.  Copy of survey of the Mortgaged Property, if applicable.

2.  Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy. i.e.. map or plat, restrictions, easements, sewer agreements, homeowner association declarations, etc.

3.  Copy of hazard insurance policy and, if required by law, flood insurance policy, with extended coverage of the hazard insurance policy.

4.  Mortgage Loan closing statement.

5.  Residential loan application.

6.  Verification of employment and income, if applicable.

7.  Verification of acceptable evidence of source and amount of down payment, if applicable.

8.  Credit report on the Mortgagor.

9.  Copy of residential appraisal report with pictures and addenda.

10. Final inspection report/completion certificate in accordance with FNMA/FHLMC guidelines, with photograph of the property, if applicable.

11. All disclosures required by law, including without limitation executed truth-in-lending statements, program disclosures for adjustable rate mortgage loans and Right of Rescission Notices, if applicable.

12. Tax receipts, insurance premium receipts, ledger sheets, payment records, insurance claim files and correspondence, current and historical computerized data files, underwriting standards used for origination or such other papers and records required by the Company to service the Mortgage Loan.

13. Complete Payment Histories, if requested by Purchaser.

14. Municipal/County Compliance Certificates, if applicable.

E-1

## EXHIBIT F

### SERVICING CONTROL NOTICE

Thornburg Mortgage Home Loans, Inc.
150 Washington Avenue, Suite 302
Santa, Fe, New Mexico 87501

_____, 2005

[SERVICER]
[ADDRESS]

          Re:     Servicing Control Agreement

Gentlemen:

_____ ("Servicer") is servicing certain mortgage loans (the "Mortgage Loans") for Thornburg Mortgage Home Loans, Inc. ("Thornburg") pursuant to that certain [servicing agreement (the "Servicing Agreement") [dated _____, 200_] between the Servicer and Thornburg]. Thornburg obtains financing from various lenders (each, as further defined below, a "Lender" and individually and collectively, the "Lenders"), secured by the Mortgage Loans and related assets, including proceeds thereof (collectively, the "Collateral"). This letter agreement confirms the agreement among the Servicer, Thornburg and the Lenders as to the matters set forth herein.

        Servicer may be notified from time to time of the identity of Lenders by delivery to Servicer of a Lender Notice in the form of Annex 1 attached hereto, and upon delivery of such Lender Notice to Servicer the lender identified in such Lender Notice shall be a Lender hereunder entitled to all of the rights and benefits hereof, until such time as a Lender Termination Notice in the form of Annex 2 executed by the Lender shall have been delivered to Servicer with respect to such Lender. Servicer agrees to acknowledge receipt of each Lender Notice and Lender Termination Notice by executing such Lender Notice or Lender Termination Notice, as applicable, and delivering it to the applicable Lender, with a copy to Thornburg.———

        Servicer acknowledges that the Collateral may include Thornburg's right, title and interest in, to and under the Servicing Agreement, and that upon an event of default under the applicable financing arrangements, the applicable Lender shall be entitled to exercise and enforce Thornburg's rights under the Servicing Agreement, including termination thereof to the extent provided in the Servicing Agreement and the applicable financing documents. Thornburg agrees to pay all termination fees or other amounts due to Servicer in connection with any termination of the Servicing Agreement and transfer of the servicing by Lender.

F-1

Servicer further agrees that, unless otherwise agreed in writing by Thornburg and all of the Lenders, Servicer shall remit all amounts collected on account of the Mortgage Loans, after deduction of amounts which Servicer is entitled to retain in accordance with the Servicing Agreement, solely to the following account(s):

        (a)     with respect to Mortgage Loans that are master serviced by Wells Fargo as master servicer, to the account specified by such master servicer for such purposes; and

        (b)     in all other cases, to the following account:

ABA # 071000505
LaSalle CHGO/CTR/BNF:/LaSalle Trust
Account No. 7226851
Attn: Rita Lopez
(312) 904-0351

The provisions of the letter agreement shall apply to each Mortgage Loan from the time Servicer commences servicing of such Mortgage Loan pursuant to the Servicing Agreement until Servicer has received a Loan Termination Notice in the form of Annex 3 attached hereto executed by the Lender relating to such Mortgage Loan.

Thornburg shall indemnify and hold the Servicer harmless for any and all claims asserted against it for any actions taken in good faith by the Servicer in accordance with this agreement.

Notices or other communications hereunder shall be given or made in writing (including without limitation by email, telex or telecopy) delivered to the intended recipient at the "Address for Notices" specified below its name on the signature pages hereof or in the applicable Lender Notice; or, as to any party, at such other address as shall be designated by such party in a written notice to each other party. Except as otherwise provided in this Agreement, all such communications shall be deemed to have been duly given when transmitted by telecopy or personally delivered or, in the case of a mailed notice, upon receipt.

No provision of this letter agreement may be modified, amended or revoked without the prior written consent of Thornburg and each Lender.

This letter agreement shall not be assignable by any party without the prior written consent of the other parties, shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, and shall be governed by and construed in accordance with the internal laws of the State of New York without reference to principles of conflicts of laws.

F-2

Please acknowledge acceptance and agreement to the foregoing by signing and returning the enclosed copy of this letter.

Very truly yours,

THORNBURG MORTGAGE HOME LOANS, INC.

By_____
Name_____
Title_____

Address for Notices:

150 Washington Avenue, Suite 302
Santa Fe, New Mexico  87501
Attention:  Xen Stanhope
Telecopier:  (505) 954-5300
Telephone:  (505) 954-5303

with a copy to:

Attention:  Nate Fellers
Telecopier:  (505) 954-5300
Telephone:  (505) 954-5303

ACCEPTED AND AGREED TO:

[SERVICER]

By_____
Name:
Title:

Address for Notices:

Attention:
Telecopier:
Telephone:

F-3

**Annex 1**

LENDER NOTICE

Gentlemen:

You are hereby notified that the undersigned is a Lender as defined in, and subject to the rights and benefits of, the Servicing Control Agreement between Thornburg Mortgage Home Loans, Inc. and the Servicer identified below.

Please acknowledge receipt of this Lender Notice by executing a copy hereof as provided below and delivering it to Lender, with a copy to Thornburg.

THORNBURG MORTGAGE HOME LOANS, INC.

By:_____
Name:
Title:


[LENDER]


By:_____
Name:
Title:

Address for Notices:

_____
_____
_____
Attention:
Telecopier:
Telephone:

ACKNOWLEDGED AND AGREED:

[SERVICER]


By:_____
Name:
Title:

F-4

**Annex 2**

## LENDER TERMINATION NOTICE

To:  [SERVICER]

Re:  Letter Agreement dated _____, 2005 between _____
("Servicer"), Thornburg Mortgage Home Loans, Inc. ("Thornburg") and
the Lenders from time to time party thereto (the "Servicing Control
Agreement")

Gentlemen:

You are hereby notified that the undersigned Lender is no longer a Lender as
defined in the above referenced Servicing Control Agreement.

Please acknowledge receipt of this Lender Termination Notice by executing a
copy hereof as provided below and delivering it to the undersigned, with a copy to Thornburg.

THORNBURG MORTGAGE HOME
LOANS, INC.

By:_____
Name:
Title:

[LENDER]

By:_____
Name:
Title:

ACKNOWLEDGED AND AGREED:
[SERVICER]

By:_____
Name:
Title:

**Annex 3**

### LOAN TERMINATION NOTICE

To:    [SERVICER]

Re:    Letter Agreement dated _____, 2005 between _____
("Servicer"), Thornburg Mortgage Home Loans, Inc. ("Thornburg") and
the Lenders from time to time party thereto (the "Servicing Control
Agreement")

Gentlemen:

You are hereby instructed, effective on _____ (the "Servicing Transfer
Date"), to service the Mortgage Loans listed on Exhibit A attached hereto to _____.

From and after the Servicing Transfer Date, the Mortgage Loans listed on Exhibit
A shall no longer be subject to the provisions of the Servicing Control Agreement.

THORNBURG MORTGAGE HOME
LOANS, INC.

By:_____
Name:
Title:

[LENDER 1]

By:_____
Name:
Title:

[LENDER 2]

By:_____
Name:
Title:

ACKNOWLEDGED AND AGREED:
[SERVICER]

By:_____
Name:
Title:

F-6

F-7

## EXHIBIT G

### OFFICER'S CERTIFICATE

I, _____, hereby certify that I am the duly elected [Vice] President of _____ ("Countrywide") and further certify as follows:

1. · Attached hereto is a true and correct copy of the Certificate of Incorporation and By-Laws of Countrywide, all of which are in full force and effect on the date hereof.

2. - There are no actions, suits or proceedings pending, against or affecting Countrywide which if adversely determined, individually or in the aggregate, would materially and adversely affect Countrywide's obligations under the Mortgage Loan Purchase and Servicing Agreement dated as of _____, 2002, between Countrywide and Thornburg Mortgage Home Loans, Inc. (the "Purchaser") (the "Purchase Agreement").

3. - Each person who, as an officer or representative of Countrywide, signed (a) the Purchase Agreement, and (b) any other document delivered prior hereto or on the date hereof in connection with the purchase described in the Purchase Agreement, was, at the respective times of such signing and delivery, and is as of the date hereof duly elected or appointed, qualified and acting as such officer or representative, and the signatures of such persons appearing on such documents are their genuine or facsimile signatures.

4. - Capitalized terms not otherwise referred to herein shall have the same meanings assigned to such terms in the Purchase Agreement.

IN WITNESS WHEREOF, I have hereunto signed my name and affixed the seal of Countrywide.

Dated: _____, 2002                _____

By:_____
Title:_____

I, _____, a _____ of _____ hereby certify that _____ is the duly elected, qualified and acting [Vice] President of Countrywide and that the signature appearing above is his/her genuine signature.

IN WITNESS WHEREOF, I have hereunto assigned my name.

Dated: _____, 2002        By:_____

Title:_____

G-2

## EXHIBIT H

---------COLLECTION ACCOUNT LETTER AGREEMENT

_____,

To:        _____

           _____

           _____
           (the "Depository")

          As "Countrywide" under the Mortgage Loan Purchase and Servicing Agreement dated as of _____, 2002, between Countrywide Home Loans, Inc. and Thornburg Mortgage Home Loans, Inc. ("Purchaser") (the "Agreement"), we hereby authorize and request you to establish an account, to be designated as "Countrywide in trust for Thornburg Mortgage Home Loans, Inc.". All deposits in the account shall be subject to withdrawal therefrom by order signed by Countrywide. You may refuse any deposit which would result in violation of the requirement that the account be fully insured up to $100,000 as described below. The letter is submitted to you in duplicate. Please execute and return one original to us.

                    COUNTRYWIDE HOME LOANS, INC.

          By:_____
             Name:
             Title:

          The undersigned, as the "Depository," hereby certifies that the above-described account has been established under Account Number _____ at the office of the Depository indicated above, and agrees to honor withdrawals on such account as provided above. The full amount up to $100,000 deposited at any time in the account will be insured by the Federal Deposit Insurance Corporation.

                    _____
                    Name of Depository

                    By: _____
                    Name:
                    Title:

H-1

## ESCROW ACCOUNT LETTER AGREEMENT

_____ , _____

To:


(the "Depository")

As "Countrywide" under the Mortgage Loan Purchase and Servicing Agreement dated as of    , 2002, between Countrywide Home Loans, Inc. and Thornburg Mortgage Home Loans, Inc. ("Purchaser") (the "Agreement"), we hereby authorize and request you to establish an account, as an Escrow Account pursuant to Section 6.6 of the Agreement, to be designated as "Countrywide, in trust for Thornburg Mortgage Home Loans, Inc. and various Mortgagors." All deposits in the account shall be subject to withdrawal therefrom by order signed by Countrywide. You may refuse any deposit which would result in violation of the requirement that the account be fully insured as described below. This letter is submitted to you in duplicate. Please execute and return one original to us.

COUNTRYWIDE HOME LOANS, INC.

By:    _____
       Name:
       Title:

The undersigned, as the "Depository," hereby certifies that the above-described account has been established under Account Number _____, at the office of the Depository indicated above, and agrees to honor withdrawals on such account as provided, above. The full amount up to $100,000.00 deposited at any time in the account will be insured by the Federal Deposit Insurance Corporation.

Name of Depository

By:
Name:
Title:

II-2

H-3

## **EXHIBIT I**

FORM OF REMITTANCE ADVICE

(attached)

EXHIBIT J

## FORM OF SARBANES-OXLEY CERTIFICATE

I, _____, certify to the Master Servicer and its officers, directors, agents and affiliates (the "[   ]"), and with the knowledge and intent that they will rely upon this certification, that:

(a)      Based on my knowledge, the information in the Annual Statement of Compliance, the Annual Independent Public Accountant's Servicing Report and all servicing reports, officer's certificates and other information relating to the servicing of the Mortgage Loans submitted to the Master Servicer during the preceding calendar year taken as a whole, does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading as of the date of this certification;

(b)      The servicing information required to be provided to the Master Servicer by the Servicer under the Servicing Agreement has been provided to the Master Servicer;

(c)      I am responsible for reviewing the activities performed by the Servicer under the Servicing Agreement and based upon the review required by the Servicing Agreement, and except as disclosed in the Annual Statement of Compliance, the Annual Independent Public Accountant's Servicing Report and all servicing reports, officer's certificates and other information relating to the servicing of the Mortgage Loans submitted to the Master Servicer, the Servicer has, as of the date of this certification, fulfilled its obligations under the Servicing Agreement; and

(d)      I have disclosed to the Master Servicer all significant deficiencies relating to the Servicer's compliance with the minimum servicing standards in accordance with a review conducted in compliance with the Uniform Single Attestation Program for Mortgage Bankers or similar standard as set forth in the Servicing Agreement;

Capitalized words not otherwise defined herein have the meaning assigned to them in the Mortgage Loan Purchase and Servicing Agreement dated September 1, 2005 by and between Servicer and Thornburg Mortgage Home Loans, Inc., as Purchaser ("Servicing Agreement").

IN WITNESS WHEREOF, I have hereunto signed by name and affixed the seal of the Company.

Dated: _____

By:_____
    Name:
    Title:

J-1