# Exhibit 3

# MASTER MORTGAGE LOAN PURCHASE AND SERVICING AGREEMENT

## GREENWICH CAPITAL FINANCIAL PRODUCTS, INC.,
Purchaser

and

## COUNTRYWIDE HOME LOANS, INC.,
Seller and Servicer

Dated as of April 1, 2003

Conventional Residential Fixed and Adjustable Rate
Mortgage Loans

[TPW: NYLEGAL:149749.6] 16159-00207 04/30/2003 3:38 PM

ABLE OF CONTENTS

Page

SECTION 1.    Definitions. ............................................................................................. 1
SECTION 2.    Agreement to Purchase. ............................................................................ 11
SECTION 3.    Mortgage Schedules. ................................................................................ 12
SECTION 4.    Purchase Price. ........................................................................................ 12
SECTION 5.    Examination of Mortgage Files. ............................................................... 13
SECTION 6.    Conveyance from Seller to Purchaser. ...................................................... 13
    Subsection .6.01. Conveyance of Mortgage Loans; Possession of Servicing Files.................. 13
    Subsection .6.02. Books and Records. ........................................................................ 13
    Subsection .6.03. Delivery of Mortgage Loan Documents. ........................................ 14
SECTION 7.    Representations, Warranties and Covenants of the Seller; Remedies for Breach. ..... 15
    Subsection .7.01. Representations and Warranties Respecting the Seller. ................... 15
    Subsection .7.02. Representations and Warranties Regarding Individual Mortgage Loans. ..... 17
    Subsection .7.03. Remedies for Breach of Representations and Warranties. ............... 24
    Subsection .7.04. Repurchase of Converted Mortgage Loans. .................................... 27
    Subsection .7.05. Covenant of the Seller. .................................................................. 27
SECTION 8.    Closing. ................................................................................................... 28
SECTION 9.    Closing Documents. ................................................................................. 28
SECTION 10.    Costs. ..................................................................................................... 30
SECTION 11.    Seller's Servicing Obligations. ............................................................... 30
SECTION 12.    Removal of Mortgage Loans from Inclusion Under this Agreement Upon a
Whole Loan Transfer or a Pass-Through Transfer on One or More Reconstitution Dates. ......... 30
SECTION 13.    The Seller. .............................................................................................. 32
    Subsection .13.01. Additional Indemnification by the Seller; Third Party Claims. ..... 32
    Subsection .13.02. Merger or Consolidation of the Seller. .......................................... 32
    Subsection .13.03. Limitation on Liability of the Seller and Others. .......................... 33
    Subsection .13.04. Seller Not to Resign. .................................................................... 33
    Subsection .13.05. No Transfer of Servicing. ............................................................. 34
SECTION 14.    Default. ................................................................................................... 34
    Subsection .14.01. Events of Default. ........................................................................ 34
    Subsection .14.02. Waiver of Defaults. ...................................................................... 36
SECTION 15.    Termination. ............................................................................................ 36
    Subsection .15.01. Termination. ................................................................................. 36
    Subsection .15.02. Termination Without Cause. ......................................................... 36
SECTION 16.    Successor to the Seller. ........................................................................... 36
SECTION 17.    Financial Statements. .............................................................................. 38
SECTION 18.    Reserved. ................................................................................................ 38
SECTION 19.    Notices. ................................................................................................... 38
SECTION 20.    Severability Clause. ................................................................................ 39
SECTION 21.    Counterparts. .......................................................................................... 39
SECTION 22.    Governing Law. ...................................................................................... 39
SECTION 23.    Intention of the Parties. .......................................................................... 39
SECTION 24.    Successors and Assigns; Assignment of Purchase Agreement. ................ 40

[TPW  NYLEGAL:140749.6] 16159-00207  04/30/2003 3:38 PM

SECTION 25.    Waivers. ........................................................................................... 40
SECTION 26.    Exhibits. .......................................................................................... 40
SECTION 27.    General Interpretive Principles. ....................................................... 40
SECTION 28.    Reproduction of Documents. ........................................................... 41
SECTION 29.    Further Agreements.......................................................................... 41
SECTION 30.    Confidentiality. ................................................................................ 41
SECTION 31.    Recordation of Assignments of Mortgage. ....................................... 41
SECTION 32.    Recordation of Agreement. .............................................................. 41
SECTION 33.    Conflict with Purchase Price and Terms Letter. ............................... 42
SECTION 34.    No Solicitation. ................................................................................ 42

.

[TPW: NYLEGAL 140749 6] 16159-00207  04/30/2005 3:38 PM

## EXHIBITS

| | |
|---|---|
| EXHIBIT 1 | SELLER'S OFFICER CERTIFICATE |
| EXHIBIT 2 | FORM OF OPINION OF COUNSEL TO THE SELLER |
| EXHIBIT 3 | SECURITY RELEASE CERTIFICATION |
| EXHIBIT 4 | ASSIGNMENT AND CONVEYANCE |
| EXHIBIT 5 | CONTENTS OF EACH MORTGAGE FILE |
| EXHIBIT 6 | FORM OF CUSTODIAL AGREEMENT |
| EXHIBIT 7 | FORM OF CUSTODIAL ACCOUNT LETTER AGREEMENT |
| EXHIBIT 8 | FORM OF ESCROW ACCOUNT LETTER AGREEMENT |
| EXHIBIT 9 | SERVICING ADDENDUM |
| EXHIBIT 10 | SELLER'S UNDERWRITING GUIDELINES |
| EXHIBIT 11 | FORM OF MONTHLY REMITTANCE ADVICE |
| EXHIBIT 12 | MORTGAGE LOAN SCHEDULE |
| EXHIBIT 13 | FORM OF BACKUP CERTIFICATION |

[TPW: NYLEGAL 140749 6] 16159-00207 04/30/2003 3 38 PM

## MASTER MORTGAGE LOAN PURCHASE AND SERVICING AGREEMENT

This is a MASTER MORTGAGE LOAN PURCHASE AND SERVICING AGREEMENT (the "Agreement"), dated as of April 1, 2003, by and between GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., having an office at 600 Steamboat Road, Greenwich, Connecticut 06830 (the "Purchaser") and Countrywide Home Loans, Inc., having an office at 4500 Park Granada, Calabasas, California 91302 (the "Seller").

## W I T N E S S E T H:

WHEREAS, the Seller desires to sell on a servicing retained basis, from time to time, to the Purchaser, and the Purchaser desires to purchase, from time to time, from the Seller, certain conventional fixed and adjustable rate residential first mortgage loans (the "Mortgage Loans") as described herein, and which shall be delivered in pools of whole loans (each a "Mortgage Loan Package") on various dates as provided herein (each a "Closing Date");

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a first lien on a residential dwelling located in the jurisdiction indicated on the Mortgage Loan Schedule for the related Mortgage Loan Package;

WHEREAS, the Purchaser and the Seller wish to prescribe the manner of the conveyance, servicing and control of the Mortgage Loans; and

WHEREAS, following its purchase of the Mortgage Loans from the Seller, the Purchaser desires to sell some or all of the Mortgage Loans to one or more purchasers as a whole loan transfer or a public or private pass through transaction;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller agree as follows:

SECTION 1.  Definitions.

For purposes of this Agreement the following capitalized terms shall have the respective meanings set forth below.

Adjustable Rate Mortgage Loan A Mortgage Loan which provides for the adjustment of the Mortgage Interest Rate payable in respect thereto.

Agreement: This Master Mortgage Loan Purchase and Servicing Agreement and all amendments hereof and supplements hereto.

Appraised Value:  With respect to any Mortgage Loan, the value of the related Mortgaged Property based upon the lesser of (i) the appraisal made for the originator at the time of origination of the Mortgage Loan and (ii) the purchase price of the Mortgaged Property at the time of origination of the Mortgage Loan, provided, however, that in the case of a Refinanced Mortgage Loan, such value is based solely upon the appraisal made at the time of origination of such Refinanced Mortgage Loan and further provided, however, in the case of a Mortgage Loan originated under the Seller's streamlined documentation program, such value may be based upon

a prior appraisal that satisfies the requirements of the Seller's streamlined documentation program.

Assignment of Mortgage:  An assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect the sale of the Mortgage to the Purchaser.

Balloon Mortgage Loan:  Any individual Mortgage Loan purchased pursuant to this Agreement wherein the Mortgage Note matures after seven years requiring a final and accelerated payment of the outstanding principal prior to full amortization.

BIF:  The Bank Insurance Fund, or any successor thereto.

Business Day:  Any day other than (i) a Saturday or Sunday, or (ii) a day on which banking and savings and loan institutions, in the States of California or New York, or the state in which the Seller's servicing operations are located, are authorized or obligated by law or executive order to be closed.

Closing Date:  The date this Agreement is executed and delivered and the date or dates on which the Purchaser from time to time shall purchase, and the Seller from time to time shall sell, the Mortgage Loans listed on the related Mortgage Loan Schedule with respect to the related Mortgage Loan Package.

Condemnation Proceeds:  All awards, compensation and settlements in respect of a taking of all or part of a Mortgaged Property by exercise of the power of condemnation or the right of eminent domain.

Convertible Mortgage Loan:  Any individual Adjustable Rate Mortgage Loan purchased pursuant to this Agreement which contains a provision whereby the Mortgagor is permitted to convert the Mortgage Loan to a fixed-rate mortgage loan in accordance with the terms of the related Mortgage Note.

Custodial Account:  The separate account or accounts created and maintained pursuant to this Agreement, which shall be entitled "Countrywide Home Loans, Inc. in trust for the Purchaser".

Custodial Agreement:  The agreement governing the retention of the originals of each Mortgage Note, Mortgage, Assignment of Mortgage and other Mortgage Loan Documents, a form of which agreement is annexed hereto as Exhibit 6.

Custodian:  The custodian under the Custodial Agreement, or its successor in interest or assigns, or any successor to the Custodian under the Custodial Agreement, as therein provided.

Cut-off Date:  The first day of the month in which the related Closing Date occurs or such other date as agreed to by the Purchaser and the Seller.

-2-

Deleted Mortgage Loan: A Mortgage Loan repurchased or replaced or to be replaced with a Qualified Substitute Mortgage Loan.

Determination Date: The 15th day of the month of the related Remittance Date or if such 15th day is not a Business Day, the Business Day immediately preceding such 15th day.

Due Date: The day of the month on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

Due Period: With respect to each Remittance Date, the period commencing on the second day of the month preceding the month of the Remittance Date and ending on the first day of the month of the Remittance Date.

Eligible Account: An account or accounts (i) maintained with a depository institution the short term debt obligations of which are rated by Standard & Poor's Ratings Group in one of its two (2) highest rating categories at the time of any deposit therein, (ii) the deposits of which are fully insured by the FDIC, or (iii) maintained with an affiliate of the Seller that satisfies the requirements set forth in either clause (i) or (ii) of this definition. Eligible Accounts may bear interest

Escrow Account: The separate trust account or accounts created and maintained pursuant to this Agreement which shall be entitled "Countrywide Home Loans, Inc. in trust for the Purchaser and various Mortgagors".

Event of Default: Any one of the conditions or circumstances enumerated in Section 14.01.

Fair Market Value: With respect to any Mortgage Loan, the market value of the related Mortgaged Property as mutually agreed upon by the Seller and the Purchaser. In the event the Seller and the Purchaser disagree as to such Fair Market Value, the Seller shall have the option to select an appraiser from a list of three independent appraisers selected by the Purchaser, each of whom meets the minimum FNMA or FHLMC requisite qualifications for appraisers. Such appraiser shall determine the Fair Market Value of the Mortgaged Property in accordance with the then current guidelines for the Seller's "full documentation program". Such appraisal shall be in a form acceptable to FNMA or FHLMC and shall be conclusive for the purposes of determining the Fair Market Value of the Mortgaged Property. The fee for such appraisal shall be paid by the Seller, except in the event such fee is incurred in connection with calculating the Termination Fee in which case the Purchaser shall pay the fee for such appraisal.

FDIC: The Federal Deposit Insurance Corporation, or any successor thereto.

FHLMC: The Federal Home Loan Mortgage Corporation or any successor thereto.

Fixed Rate Mortgage Loan: A Mortgage Loan with respect to which the Mortgage Interest Rate set forth in the Mortgage Note is fixed for the term of such Mortgage Loan.

FNMA: Fannie Mae or any successor thereto.

-3-

Funding Deadline: With respect to each Closing Date, one o'clock p.m. (1:00 p.m.) New York time, or such other time mutually agreed to by the Purchaser and the Seller.

Gross Margin: With respect to each Mortgage Loan, the fixed percentage amount set forth in the related Mortgage Note which amount is added to the Index in accordance with the terms of the related Mortgage Note to determine on each Interest Adjustment Date, the Mortgage Interest Rate for such Mortgage Loan.

HUD: The Department of Housing and Urban Development or any federal agency or office thereof which may from time to time succeed to the functions thereof.

Index: With respect to any Mortgage Loan, the index set forth in the related Mortgage Note for the purpose of calculating the interest rate thereon.

Information Diskette: A diskette or electronic file delivered by the Seller to the Purchaser, or an electronic data transfer from the Seller to the Purchaser, in respect of each Mortgage Loan Package which shall contain: (i) the information necessary for the Mortgage Loan Schedule (other than the information required for items 18, 19, 25, 26 and 27 of the first sentence of the definition of Mortgage Loan Schedule and items 3 and 4 of the second sentence of the definition of Mortgage Loan Schedule which information shall be provided by Seller from other sources); and (ii) the date the last Monthly Payment was actually applied to the unpaid principal balance; provided, however, with respect to a Fixed Rate Mortgage Loan, the diskette shall not include the information on the Mortgage Loan Schedule required under items 14, 15, 17, 18, 25, 26 and 27.

Insurance Proceeds: With respect to each Mortgage Loan, proceeds of insurance policies insuring the Mortgage Loan or the related Mortgaged Property.

Interest Adjustment Date: With respect to an Adjustable Rate Mortgage Loan, the date on which an adjustment to the Mortgage Interest Rate on a Mortgage Note becomes effective.

Late Collections: With respect to any Mortgage Loan, all amounts received during any Due Period, whether as late payments of Monthly Payments or as Liquidation Proceeds, Condemnation Proceeds, Primary Mortgage Insurance Proceeds, Other Insurance Proceeds, proceeds of any REO Disposition or otherwise, which represent late payments or collections of Monthly Payments due but delinquent for a previous Due Period and not previously recovered.

Lender PMI Mortgage Loan: Any individual Mortgage Loan subject to a Primary Mortgage Insurance Policy, the premiums of which are paid by the mortgagee.

Lifetime Mortgage Interest Rate Cap: With respect to each Adjustable Rate Mortgage Loan, the absolute maximum Mortgage Interest Rate payable, above which the Mortgage Interest Rate can not be adjusted.

Limited Documentation Program: The guidelines set forth on Exhibit 10 hereto under which the Seller generally originates Mortgage Loans principally on the basis of the

-4-

Loan-to-Value Ratio of the related Mortgage Loan and the creditworthiness of the Mortgagor. The maximum Loan-to-Value Ratio permitted under the Limited Documentation Program is 80%.

Liquidation Proceeds: Amounts, other than Primary Mortgage Insurance Proceeds. Condemnation Proceeds and Other Insurance Proceeds. received by the Seller in connection with the liquidation of a defaulted Mortgage Loan through trustee's sale. foreclosure sale or otherwise, other than amounts received following the acquisition of an REO Property pursuant to Section 11.13.

Loan-to-Value Ratio or LTV: With respect to any Mortgage Loan, the ratio of the outstanding principal amount of the Mortgage Loan as of the date of determination to the Appraised Value of the related Mortgaged Property.

MERS: Mortgage Electronic Registration Systems. Inc.. a corporation organized and existing under the laws of the State of Delaware. or any successor thereto.

MERS Mortgage Loan: Any Mortgage Loan registered with MERS on the MERS System.

MERS System: The system of recording transfers of mortgages electronically maintained by MERS.

MIN: The Mortgage Identification Number for any MERS Mortgage Loan.

MOM Loan: Any Mortgage Loan as to which MERS is acting as mortgagee, solely as nominee for the originator of such Mortgage Loan and its successors and assigns.

Monthly Advance: The aggregate of the advances made by the Seller on any Remittance Date pursuant to Section 11.19.

Monthly Payment: The scheduled monthly payment of principal and interest on a Mortgage Loan.

Mortgage: The mortgage. deed of trust or other instrument securing a Mortgage Note. which creates a first lien on an unsubordinated estate in fee simple in real property securing the Mortgage Note; except that with respect to real property located in the state of Hawaii, the mortgage, deed of trust or other instrument securing the Mortgage Note may secure and create a first lien upon a leasehold estate of the Mortgagor.

Mortgage File: The items pertaining to a particular Mortgage Loan referred to in Exhibit 5 annexed hereto. and any additional documents required to be added to the Mortgage File pursuant to this Agreement which Mortgage File may be maintained by the Seller on microfilm (provided that (i) the Seller shall notify the Purchaser in writing two (2) Business Days before any original items in the Mortgage File are to be destroyed and the Seller shall deliver said original items to the Purchaser upon the Purchaser's request and (ii) following the destruction of said originals. the Seller shall deliver a copy of said microfilm to the Purchaser upon the Purchaser's request).

-5-

Mortgage Interest Rate:  The annual rate at which interest accrues on any Mortgage Loan. exclusive of any primary mortgage insurance premium and, with respect to an Adjustable Rate Mortgage Loan. as adjusted from time to time in accordance with the provisions of the related Mortgage Note and in compliance with the related Lifetime Mortgage Interest Rate Cap and Periodic Rate Cap of the related Mortgage Note.

Mortgage Loan:  An individual Mortgage Loan which is the subject of this Agreement, each Mortgage Loan originally sold and subject to this Agreement being identified on the related Mortgage Loan Schedule. which Mortgage Loan includes without limitation the Mortgage File, the Monthly Payments, Principal Prepayments. Liquidation Proceeds. Condemnation Proceeds. Insurance Proceeds. REO Disposition proceeds. and all other rights. benefits. proceeds and obligations arising from or in connection with such Mortgage Loan.

Mortgage Loan Documents:  The documents listed in Section 2 of the Custodial Agreement pertaining to any Mortgage Loan.

Mortgage Loan Package:  The pool of Mortgage Loans sold to the Purchaser on the related Closing Date.

Mortgage Loan Schedule:  The schedule of Mortgage Loans to be prepared by the Seller or Purchaser (at Seller's option) from information contained on an Information Diskette and other information delivered by the Seller to the Purchaser in respect of each Mortgage Loan Package, setting forth the following information with respect to each Mortgage Loan:  (1) the Seller's Mortgage Loan identifying number; (2) the Mortgagor's name; (3) the street address of the Mortgaged Property including the city, state and zip code; (4) a code indicating whether the Mortgaged Property is the Mortgagor's primary residence. secondary residence or an investor property; (5) the type of residential units constituting the Mortgaged Property (i.e., detached single family, two-to-four-family. condominium units. etc.); (6) the original months to maturity or the remaining months to maturity from the Cut-off Date. in any case based on the original amortization schedule and. if different. the maturity expressed in the same manner but based on the actual amortization schedule; (7) the Appraised Value of the Mortgaged Property and the Loan- to-Value Ratio at origination; (8) the Mortgage Interest Rate at origination; (9) the date on which the initial Monthly Payment was due on the Mortgage Loan; (10) the stated maturity date; (11) the amount of the Monthly Payment as of the Cut-off Date; (12) the original principal amount of the Mortgage Loan; (13) the principal balance of the Mortgage Loan as of the close of business on the Cut-off Date. after deduction of payments of principal due on or before the Cut-off Date whether or not collected; (14) with respect to an Adjustable Rate Mortgage Loan. the first Interest Adjustment Date; (15) with respect to an Adjustable Rate Mortgage Loan. the Gross Margin; (16) a code indicating the purpose of the loan (i.e., purchase. rate and term refinance. equity take-out refinance); (17) with respect to an Adjustable Rate Mortgage Loan. the Lifetime Mortgage Interest Rate Cap under the terms of the Mortgage Note: (18) with respect to an Adjustable Rate Mortgage Loan. the Periodic Rate Cap; (19) the Servicing Fee Rate; (20) a code indicating the documentation style (i.e., full. alternative, reduced or streamlined); (21) a code indicating whether a Mortgage Loan is a Fixed Rate or Adjustable Rate Mortgage Loan: (22) the Primary Mortgage Insurance Policy number. if any. which number (or an additional code) shall identify the applicable Primary Mortgage Insurance Policy provider: (23) any other information to be listed as agreed to between the Seller and the Purchaser; (24) a code indicating

-6-

whether the Mortgage Loan is a MERS Mortgage Loan: (25) a code indicating whether the Mortgage Loan is a Lender PMI Mortgage Loan and, in the case of any Lender PMI Mortgage Loan, a percentage representing the amount of the related interest premium charged to the Mortgagor: (26) the Mortgage Interest Rate as of the Cut-off Date: and (27) the index. With respect to the Mortgage Loans in the aggregate, the Mortgage Loan Schedule shall set forth the following information. as of the Cut-off Date: (1) the number of Mortgage Loans; (2) the current principal balance of the Mortgage Loans; and (3) the weighted average Mortgage Interest Rate of the Mortgage Loans. Such schedule may be delivered in magnetic tape or hard copy form or any combination thereof.

Mortgage Note: The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

Mortgaged Property: The real property (or leasehold estate. if applicable. in the case of a Mortgage Loan in the state of Hawaii) securing repayment of the debt evidenced by a Mortgage Note.

Mortgagor: The obligor on a Mortgage Note.

Officer's Certificate: A certificate signed by the Chairman of the Board or the Vice Chairman of the Board or a President or a Vice President and by the Treasurer or the Secretary or one of the Assistant Treasurers or Assistant Secretaries of the Seller, and delivered to the Purchaser.

Opinion of Counsel: A written opinion of counsel, who may be an employee of the party on behalf of whom the opinion is being given. reasonably acceptable to the Purchaser.

Other Insurance Proceeds: Proceeds of any title policy. hazard policy. pool policy or other insurance policy covering a Mortgage Loan. other than the Primary Mortgage Insurance Policy. if any. to the extent such proceeds are not to be applied to the restoration of the related Mortgaged Property or released to the Mortgagor in accordance with the procedures that the Seller would follow in servicing mortgage loans held for its own account.

Payment Adjustment Date: With respect to each Adjustable Rate Mortgage Loan. the date on which an adjustment to the Monthly Payment pursuant to the related Mortgage Note becomes effective.

Pass-Through Transfer: The sale or transfer of some or all of the Mortgage Loans to a trust to be formed as part of a publicly or privately traded pass-through transaction retaining the Seller as "servicer" thereunder.

Periodic Rate Cap: With respect to each Adjustable Rate Mortgage Loan. the provision of each Mortgage Note which provides for an absolute maximum amount by which the Mortgage Interest Rate therein may increase or decrease on an Interest Adjustment Date above the Mortgage Interest Rate previously in effect.

Person: Any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Prepayment Interest Shortfall Amount: With respect to any Mortgage Loan that was subject to a Principal Prepayment in full or in part during any Due Period, which Principal Prepayment was applied to such Mortgage Loan prior to such Mortgage Loan's Due Date in such Due Period, the amount of interest (net of the related Servicing Fee) that would have accrued on the amount of such Principal Prepayment during the period commencing on the date as of which such Principal Prepayment was applied to such Mortgage Loan and ending on the day immediately preceding such Due Date, inclusive.

Primary Mortgage Insurance Policy: A policy of primary mortgage guaranty insurance issued by a Qualified Insurer which conforms in all respects to the description set forth in Subsection 7.02 (xxxi) herein.

Principal Prepayment: Any payment or other recovery of principal on a Mortgage Loan which is received in advance of its scheduled Due Date, including any prepayment penalty or premium thereon, which is not accompanied by an amount of interest representing scheduled interest due on any date or dates in any month or months subsequent to the month of prepayment.

Principal Prepayment Period: As to any Remittance Date, the calendar month preceding the month of distribution.

Purchase Price: The price paid on the related Closing Date by the Purchaser to the Seller in exchange for the Mortgage Loans purchased on such Closing Date as calculated in Section 4 of this Agreement.

Purchase Price and Terms Letters: Those certain letter agreements executed on or after the date hereof setting forth the general terms and conditions of each transaction contemplated herein and identifying the loan characteristics of the Mortgage Loans to be purchased from time to time hereunder, by and between the Seller and the Purchaser. All of the individual Purchase Price and Terms Letters shall collectively be referred to as the "Purchase Price and Terms Letter".

Purchaser: Greenwich Capital Financial Products, Inc. or its successor in interest or any successor to or assignee of the Purchaser under this Agreement as herein provided.

Qualified Insurer: An insurance company duly qualified as such under the laws of the states in which the Mortgaged Properties are located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided, approved as an insurer by FNMA and FHLMC and whose claims paying ability is rated in one of the two highest rating categories by the Standard & Poor's Ratings Group or Moody's Investors Service, Inc. with respect to primary mortgage insurance and in one of the two highest rating categories by A.M. Best Company, Inc. with respect to hazard and flood insurance.

Qualified Substitute Mortgage Loan: A mortgage loan eligible to be substituted by the Seller for a Deleted Mortgage Loan which must, on the date of such substitution, (i) have

-8-

an unpaid principal balance. after deduction of all scheduled payments due in the month of substitution (or in the case of a substitution of more than one (1) mortgage loan for a Deleted Mortgage Loan. an aggregate principal balance). not in excess of the unpaid principal balance of the Deleted Mortgage Loan (the amount of any shortfall will be deposited in the Custodial Account by the Seller in the month of substitution); (ii) have a Mortgage Interest Rate not less than. and not more than 1% greater than. the Mortgage Interest Rate of the Deleted Mortgage Loan; (iii) have a remaining term to maturity not later than. and not more than one year earlier than. the maturity date of the Deleted Mortgage Loan: (iv) comply with each representation and warranty (respecting individual Mortgage Loans) set forth in Section 7 hereof; and (v) be the same type of Mortgage Loan (i.e.. a Fixed Rate Mortgage Loan. and/or the same type of Adjustable Rate Mortgage Loan).

Reconstitution Agreements: The agreement or agreements entered into by the Seller and the Purchaser and/or certain third parties on the Reconstitution Date or Dates with respect to any or all of the Mortgage Loans serviced hereunder. in connection with a Whole Loan Transfer or a Pass-Through Transfer as set forth in Section 12. Such agreement or agreements shall prescribe the rights and obligations of the Seller in servicing the related Mortgage Loans.

Reconstitution Date: The date or dates on which any or all of the Mortgage Loans serviced under this Agreement shall be removed from this Agreement and reconstituted as part of a Whole Loan Transfer or Pass-Through Transfer pursuant to Section 12 hereof. On such date. the Mortgage Loans transferred shall cease to be covered by this Agreement and the Seller shall cease to service those Mortgage Loans under this Agreement in accordance with the termination provisions set forth in Section 12 hereof.

Record Date: With respect to each Remittance Date. the close of business of the last Business Day of the month preceding the month of the related Remittance Date.

Refinanced Mortgage Loan: A Mortgage Loan which was made to a Mortgagor who owned the Mortgaged Property prior to the origination of such Mortgage Loan and the proceeds of which were used in whole or part to satisfy an existing mortgage.

REMIC: A "real estate mortgage investment conduit" within the meaning of Section 860D of the Internal Revenue Code.

Remittance Date: The eighteenth (18th) day of any month. or if such eighteenth (18th) day is not a Business Day. the first Business Day immediately following.

REO Disposition: The final sale by the Seller of any REO Property.

REO Property: A Mortgaged Property acquired by the Seller on behalf of the Purchaser as described in Section 11.13 of the Servicing Addendum attached as Exhibit 9.

Repurchase Price: With respect to any Mortgage Loan. a price equal to (i) the Stated Principal Balance of the Mortgage Loan plus (ii) interest on such Stated Principal Balance at the Mortgage Loan Remittance Rate from the last date through which interest has been paid and distributed to the Purchaser to the date of repurchase. less amounts received or advanced in

-9-

respect of such repurchased Mortgage Loan which are being held in the Custodial Account for distribution in the month of repurchase.

SAIF: The Savings Association Insurance Fund, or any successor thereto.

Seller: Countrywide Home Loans, Inc., or any successor to or assignee of the Seller under this Agreement as provided herein.

Servicing Addendum: The terms and conditions attached hereto as Exhibit 9 which will govern the servicing of the Mortgage Loans by Seller during the period commencing on the related Closing Date and ending on the date the Seller enters into a Reconstitution Agreement.

Servicing Advances: All customary, reasonable and necessary "out of pocket" costs and expenses incurred in the performance by the Seller of its servicing obligations, including, but not limited to, the cost of (i) the preservation, restoration and protection of the Mortgaged Property, (ii) any enforcement or judicial proceedings, including foreclosures, (iii) the management and liquidation of the REO Property and (iv) compliance with the obligations under this Agreement.

Servicing Fee: With respect to each Mortgage Loan, the amount of the annual fee the Purchaser shall pay to the Seller, which shall, for a period of one full month, be equal to one-twelfth of the product of (a) the Servicing Fee Rate and (b) the Stated Principal Balance of such Mortgage Loan. Such fee shall be payable monthly, computed on the basis of the same principal amount and period respecting which any related interest payment on a Mortgage Loan is computed. The obligation of the Purchaser to pay the Servicing Fee is limited to, and the Servicing Fee is payable solely from, the interest portion of such Monthly Payment collected by the Seller, or as otherwise provided under Section 11 hereof. With respect to REO Property, the Servicing Fee shall be payable to the Seller through REO Disposition in accordance with Section 11.13 of the Servicing Addendum which Servicing Fee shall be based upon the Stated Principal Balance of the related Mortgage Loan at the time of foreclosure as reduced by any income or proceeds received by Purchaser in respect of such REO Property and applied to reduce the outstanding principal balance of the foreclosed Mortgage Loan.

Servicing Fee Rate: The per annum rate at which the Servicing Fee accrues, which rate shall be set forth in the related Purchase Price and Terms Letter.

Servicing File: With respect to each Mortgage Loan, the file retained by the Seller consisting of (a) originals of all documents in the Mortgage File other than those delivered to Purchaser or copies of such documents maintained on microfilm (provided that (i) the Seller shall notify the Purchaser in writing two (2) Business Days before any original items in the Servicing File are to be destroyed and the Seller shall deliver said originals to the Purchaser upon the Purchaser's request and (ii) following the destruction of said originals, the Seller shall deliver a copy of said microfilm to the Purchaser upon the Purchaser's request) which are not delivered to the Purchaser or the Custodian and (b) copies of the Mortgage Loan Documents set forth in Section 2 of the Custodial Agreement.

-10-

Servicing Officer:  Any officer of the Seller involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name appears on a list of servicing officers furnished by the Seller to the Purchaser upon request, as such list may from time to time be amended.

Stated Principal Balance:  With respect to each Mortgage Loan as of the date of such determination:  (i) the unpaid principal balance of the Mortgage Loan as of the Cut-off Date after giving effect to payments of principal due on or before such date, whether or not received, and without giving effect to payments received on or before such date in respect of payments due after such date for application on the scheduled Due Date, minus (ii) all amounts previously distributed to the Purchaser with respect to the related Mortgage Loan representing payments or recoveries of principal or advances in lieu thereof.

Termination Fee:  The amount paid to the Seller by the Purchaser in the event of the Seller's termination without cause, as servicer.  Such fee shall equal the sum of (i) the greater of (A) two and one-half percent (2½%) of the aggregate outstanding principal amount of the Mortgage Loans, or (B) the fair market value of the servicing rights, each as of the termination date, plus (ii) all reasonable costs and expenses incurred by the Seller in managing the transfer of the servicing, plus (iii) in the case of REO Property, the greater of (Y) 100% of the Stated Principal Balance of the Mortgage Loan encumbering the Mortgaged Property at the time such Mortgaged Property was acquired and became REO Property or (Z) the Fair Market Value of the REO Property at the time of termination.

Underwriting Guidelines:  As defined in the respective Purchase Price and Terms Letter.

Updated Loan-to-Value Ratio:  With respect to any Mortgage Loan, the outstanding principal balance of such Mortgage Loan as of the date of determination divided by the Value of the related Mortgaged Property as determined by the appraisal made for the originator at the time of origination of the Mortgage Loan or in the event that an appraisal was made since the origination of the Mortgage Loan then the latest appraisal of the Mortgaged Property.  Such appraisal shall (i) be in a form acceptable to FNMA and FHLMC and (ii) meet the then current guidelines for the Company's so called "full documentation" program.

Whole Loan Agreement:  Any Reconstitution Agreement in respect of a Whole Loan Transfer.

Whole Loan Transfer:  The sale or transfer by Purchaser of some or all of the Mortgage Loans in a whole loan or participation certificate format pursuant to a Reconstitution Agreement retaining the Seller as "servicer" thereunder.

SECTION 2.  Agreement to Purchase.

The Seller agrees to sell, and the Purchaser agrees to purchase, Mortgage Loans having an aggregate unpaid principal balance on the related Cut-off Date in an amount as set forth in the related Purchase Price and Terms Letter, or in such other amount as agreed by the

-11-

Purchaser and the Seller as evidenced by the actual aggregate unpaid principal balance of the Mortgage Loans accepted by the Purchaser on the Closing Date.

### SECTION 3.   Mortgage Schedules.

No later than the related Closing Date, the Seller shall deliver to the Purchaser the Information Diskette and all other information agreed to be provided by the Seller in the definition of Information Diskette or in the Purchase Price and Terms Letter with respect to each Mortgage Loan, which Information Diskette, with all other applicable information given by Seller to Purchaser, shall be used to prepare the Mortgage Loan Schedule listing the Mortgage Loans to be purchased on such Closing Date. Such Mortgage Loans shall conform to the terms set forth in the related Purchase Price and Terms Letter and, to the extent not consistent with the Purchase Price and Terms Letter and this Agreement, any Mortgage Loans which do not so conform shall, at the Purchaser's option, be deleted from the Mortgage Loan Schedule prior to the Closing Date, and, pursuant to Subsection 7.03 of this Agreement, may be replaced by a substitute Mortgage Loan (or Mortgage Loans) acceptable to the Purchaser.

### SECTION 4.   Purchase Price.

The Purchase Price for each Mortgage Loan shall be the percentage of par as stated in the related Purchase Price and Terms Letter (subject to adjustment as provided therein), multiplied by the aggregate Stated Principal Balance, as of the related Cut-off Date, of the Mortgage Loans listed on the related Mortgage Loan Schedule. If so provided in the related Purchase Price and Terms Letter, portions of the Mortgage Loans shall be priced separately.

In addition to the Purchase Price as described above, the Purchaser shall pay to the Seller, at closing, accrued interest on the Stated Principal Balance as of the Cut-off Date of the related Mortgage Loans at the weighted average interest rate of those Mortgage Loans, net of interest at the Servicing Fee Rate, from the related Cut-off Date to the day prior to the related Closing Date, inclusive and, with respect to Lender PMI Mortgage Loans, net of the amount of the fee for the related policy, from the related Cut-off Date to the day prior to the related Closing Date, inclusive.

The Purchaser shall be entitled to (1) all scheduled principal due after the related Cut-off Date, (2) all other recoveries of principal collected after the related Cut-off Date (provided, however, that all scheduled payments of principal due on or before the related Cut-off Date and collected by the Seller after the related Cut-off Date shall belong to the Seller), and (3) all payments of interest on the Mortgage Loans net of interest at the Servicing Fee Rate (minus that portion of any such payment which is allocable to the period prior to the related Cut-off Date) and, with respect to Lender PMI Mortgage Loans, net of the amount of the fee for the related policy. The unpaid principal balance of each Mortgage Loan as of the related Cut-off Date is determined after application of payments of principal due on or before the related Cut-off Date whether or not collected. Therefore, payments of scheduled principal and interest prepaid for a due date beyond the related Cut-off Date shall not be applied to the principal balance as of the related Cut-off Date. Such prepaid amounts (minus interest at the Servicing Fee Rate) shall be the property of the Purchaser. The Seller shall deposit any such prepaid amounts into the Custodial Account, which account is established for the benefit of the Purchaser for subsequent

-12-

remittance by the Seller to the Purchaser. All payments of principal and interest, less interest at the Servicing Fee Rate, due on the first day of the month after the related Cut-off Date shall belong to the Purchaser.

SECTION 5. Examination of Mortgage Files.

Not later than the Business Day prior to the related Closing Date, the Seller shall (a) deliver to the Custodian in escrow, for examination with respect to each Mortgage Loan to be purchased, the related Mortgage Loan Documents, including the Assignment of Mortgage, pertaining to each Mortgage Loan, or (b) make the related Mortgage File available to the Purchaser for examination at the Seller's offices or such other location as shall otherwise be agreed upon by the Purchaser and the Seller. Such examination may be made by the Purchaser or its designee at any reasonable time before or after the related Closing Date. If the Purchaser makes such examination prior to the related Closing Date and identifies any Mortgage Loans that do not conform to the requirements of the Purchase Price and Terms Letter, such Mortgage Loans, at the Purchaser's option, shall be deleted from the related Mortgage Loan Schedule, and, pursuant to Subsection 7.03 of this Agreement, may be replaced by a substitute Mortgage Loan (or Mortgage Loans) acceptable to the Purchaser. The Purchaser may, at its option and without notice to the Seller as to whether it has examined the Mortgage Files, purchase all or part of the Mortgage Loans without conducting any partial or complete examination. The fact that the Purchaser or its designee has conducted or has failed to conduct any partial or complete examination of the Mortgage Files shall not affect the Purchaser's (or any of its successor's) rights to demand repurchase, substitution or other relief as provided herein.

SECTION 6. Conveyance from Seller to Purchaser.

Subsection 6.01. Conveyance of Mortgage Loans; Possession of Servicing

Files

On each Closing Date, the Seller shall execute and deliver an Assignment and Conveyance in the form attached hereto as Exhibit 4. The Servicing File retained by the Seller pursuant to this Agreement shall be appropriately identified in the Seller's computer system to clearly reflect the sale of the related Mortgage Loan to the Purchaser. The Seller shall release from its custody the contents of any Servicing File retained by it only in accordance with this Agreement.

Subsection 6.02. Books and Records.

Record title to each Mortgage and the related Mortgage Note as of the related Closing Date shall be in the name of the relevant Mortgage Loan originator or the Seller. Notwithstanding the foregoing, ownership of each Mortgage and related Mortgage Note shall be possessed solely by the Purchaser or the appropriate designee of the Purchaser, as the case may be. All rights arising out of the Mortgage Loans including, but not limited to, all funds received by the Seller after the related Cut-off Date on or in connection with a Mortgage Loan, other than as provided in this Agreement, shall be vested in the Purchaser or one or more designees of the Purchaser; provided, however, that all funds received on or in connection with a Mortgage Loan shall be received and held by the Seller in trust for the benefit of the Purchaser or the appropriate

-13-

designee of the Purchaser, as the case may be, as the owner of the Mortgage Loans pursuant to the terms of this Agreement.

The sale of each Mortgage Loan shall be reflected on the Seller's balance sheet and other financial statements as a sale of assets by the Seller.

The Seller shall maintain with respect to each Mortgage Loan and shall make available for inspection by any Purchaser or its designee the related Servicing File during the time the Purchaser retains ownership of a Mortgage Loan and thereafter in accordance with applicable laws and regulations.

The Seller shall keep at its servicing office books and records in which, subject to such reasonable regulations as it may prescribe, the Seller shall note transfers of Mortgage Loans. No transfer of a Mortgage Loan may be made unless such transfer is in compliance with the terms hereof. For the purposes of this Agreement, the Seller shall be under no obligation to deal with any person with respect to this Agreement or the Mortgage Loans unless the books and records show such person as the owner of the Mortgage Loan. The Purchaser may, subject to the terms of this Agreement, sell and transfer one or more of the Mortgage Loans. Upon receipt of notice of the transfer, the Seller shall mark its books and records to reflect the ownership of the Mortgage Loans of such assignee, and shall release the previous Purchaser from its obligations hereunder with respect to the Mortgage Loans sold or transferred.

Subsection 6.03.   Delivery of Mortgage Loan Documents.

Pursuant to the Custodial Agreement, on the Business Day prior to each Closing Date, the Seller shall deliver and release to the Custodian those Mortgage Loan Documents as required by the Custodial Agreement with respect to each Mortgage Loan set forth on the related Mortgage Loan Schedule.

In addition, in connection with the assignment of any MERS Mortgage Loan, the Seller agrees that it will cause, at the Seller's expense, the MERS System to indicate that such Mortgage Loans have been assigned by the Seller to the Purchaser in accordance with this Agreement (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) by including in such computer files the information required by the MERS System to identify the Purchaser and the series in which such Mortgage Loans were sold. The Seller further agrees that it will not alter the codes referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

If pursuant to the foregoing provisions the Seller repurchases a Mortgage Loan that is a MERS Mortgage Loan, the Seller shall either (i) cause MERS to execute and deliver an Assignment of Mortgage in recordable form to transfer the Mortgage from MERS to the Seller and shall cause such Mortgage to be removed from registration on the MERS System in accordance with MERS' rules and regulations or (ii) cause MERS to designate on the MERS System the Seller or its designee as the beneficial holder of such Mortgage Loan.

-14-

The Custodian shall certify its receipt of all such Mortgage Loan Documents required to be delivered pursuant to the Custodial Agreement for the related Closing Date, as evidenced by the Initial Certification of the Custodian in the form annexed to the Custodial Agreement. The Purchaser shall be responsible for maintaining the Custodial Agreement and shall pay all fees and expenses of the Custodian.

The Seller shall forward by personal delivery, recognized overnight delivery service or registered or certified first class mail, postage prepaid, return receipt requested to the Custodian original documents evidencing an assumption, modification, consolidation or extension of any Mortgage Loan entered into in accordance with this Agreement within two (2) weeks of their execution, provided, however, that the Seller shall provide the Custodian with a certified true copy of any such document submitted for recordation within two (2) weeks of its execution, and shall provide the original of any document submitted for recordation or a copy of such document certified by the appropriate public recording office to be a true and complete copy of the original promptly upon receipt of same, but in no event later than eighteen (18) months after such document was submitted for recording.

SECTION 7.   Representations, Warranties and Covenants of the Seller; Remedies for Breach.

Subsection 7.01.   Representations and Warranties Respecting the Seller.

The Seller represents, warrants and covenants to the Purchaser that as of each Closing Date or as of such date specifically provided herein:

(i)   The Seller is duly organized, validly existing and in good standing under the laws of New York and is qualified to transact business in and is in good standing under the laws of each state where a Mortgaged Property is located or is otherwise exempt under applicable law from such qualification or is otherwise not required under applicable law to effect such qualification and no demand for such qualification has been made upon the Seller by any state having jurisdiction and in any event the Seller is or will be in compliance with the laws of any such state to the extent necessary to insure the enforceability of each Mortgage Loan and the servicing of the Mortgage Loans in accordance with the terms of this Agreement. No licenses or approvals obtained by Seller have been suspended by any court, administrative agency, arbitrator or governmental body and no proceedings are pending which might result in such suspension;

(ii)     The Seller has the full power and authority to execute, deliver and perform, and to enter into and consummate, all transactions contemplated by this Agreement. The Seller has duly authorized the execution, delivery and performance of this Agreement and has duly executed and delivered this Agreement. This Agreement, assuming due authorization, execution and delivery by the Purchaser, constitutes a legal, valid and binding obligation of the Seller, enforceable against it in accordance with its terms except as the enforceability thereof may be limited by bankruptcy, insolvency, or reorganization. As of the related Closing Date, the Seller has the full power and authority to hold each Mortgage Loan and to sell each Mortgage Loan;

(iii)    Neither the execution and delivery of this Agreement, the acquisition or origination of the Mortgage Loans by the Seller, the sale of the Mortgage Loans to the Purchaser, the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of the Seller's certificate of incorporation or by-laws or result in a material breach of any legal restriction or any agreement or instrument to which the Seller is now a party or by which it is bound, or constitute a material default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment or decree to which the Seller or its property is subject or impair the ability of the Purchaser to realize on the Mortgage Loans, or impair the value of the Mortgage Loans;

(iv)     The Seller is an approved seller/servicer for either FNMA or FHLMC in good standing and is a mortgagee approved by the Secretary of HUD pursuant to Section 203 and 211 of the National Housing Act. No event has occurred, including but not limited to a change in insurance coverage, which would make the Seller unable to comply with FNMA, FHLMC or HUD eligibility requirements or which would require notification to FNMA, FHLMC or HUD;

(v)      The Seller does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement;

(vi)     There is no action, suit, proceeding, investigation or litigation pending or, to the Seller's knowledge, threatened, which either in any one instance or in the aggregate, if determined adversely to the Seller would adversely affect the sale of the Mortgage Loans to the Purchaser, the execution, delivery or enforceability of this Agreement, the ability of the Seller to service the Mortgage Loans hereunder in accordance with the terms hereof, or the Seller's ability to perform its obligations under this Agreement;

(vii)    No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Seller of or compliance by the Seller with this Agreement or the terms of the Mortgage Loans, the delivery of a portion of the Mortgage Files to the Custodian for the benefit of the Purchaser, the sale of the Mortgage Loans to the Purchaser or the consummation of the transactions contemplated by this Agreement, or if required, such consent, approval, authorization or order has been obtained prior to the related Closing Date;

(viii)    The consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Seller, and the transfer, assignment and conveyance of the Mortgage Notes and the Mortgages by the Seller pursuant to this Agreement are not subject to the bulk transfer or any similar statutory provisions in effect in the State of California;

(ix)    No written statement, report or other document prepared and furnished or to be prepared and furnished by the Seller pursuant to this Agreement or in connection with the transactions contemplated hereby contains any untrue statement of material fact or omits to state a material fact necessary to make the statements contained therein not misleading; and

(x)    The Seller is a member of MERS in good standing, and will comply in all material respects with the rules and procedures of MERS in connection with the servicing of the MERS Mortgage Loans for as long as such Mortgage Loans are registered with MERS.

Subsection 7.02.    Representations and Warranties Regarding Individual Mortgage Loans.

The Seller hereby represents and warrants to the Purchaser that, as to each Mortgage Loan, as of the related Closing Date for such Mortgage Loan:

(i)    The information contained in the Mortgage Loan Schedule is complete, true and correct;

(ii)    All payments required to be made up to, and excluding, the related Cut-off Date for such Mortgage Loan under the terms of the Mortgage Note have been made; the Seller has not advanced funds, or induced, solicited or knowingly received any advance of funds from a party other than the owner of the Mortgaged Property subject to the Mortgage, directly or indirectly, for the payment of any amount required by the Mortgage Loan; and there has been no delinquency of more than thirty days in any payment by the Mortgagor thereunder during the last twelve months;

(iii)    There are no delinquent taxes, ground rents, water charges, sewer rents, assessments, insurance premiums, leasehold payments, including assessments payable in future installments or other outstanding charges affecting the related Mortgaged Property;

(iv)    The terms of the Mortgage Note and the Mortgage have not been impaired, waived, altered or modified in any respect, except by written instruments which have been recorded, if necessary to protect the interests of the Purchaser, and which have been delivered to the Purchaser or the Custodian. The substance of any such waiver, alteration or modification has been approved by the primary mortgage guaranty insurer, if any, and by the title insurer, to the extent required by the related policy and its terms are reflected on the Mortgage Loan Schedule. No Mortgagor has been released, in whole or in part, except in connection with an assumption agreement approved by the primary mortgage insurer, if any, and title insurer, to

-17-

the extent required by the policy, and which assumption agreement is part of the Mortgage File
and the terms of which are reflected in the Mortgage Loan Schedule:

(v)       The Mortgage Note and the Mortgage are not subject to any right
of rescission, set-off, counterclaim or defense, including the defense of usury, nor will the
operation of any of the terms of the Mortgage Note and the Mortgage, or the exercise of any right
thereunder, render the Mortgage unenforceable, in whole or in part, or subject to any right of
rescission, set-off, counterclaim or defense, including the defense of usury and no such right of
rescission, set-off, counterclaim or defense has been asserted with respect thereto;

(vi)      All buildings upon the Mortgaged Property are insured by an
insurer acceptable to either FNMA or FHLMC against loss by fire, hazards of extended coverage
and such other hazards as are customary in the area where the Mortgaged Property is located,
pursuant to insurance policies conforming to the requirements of the Servicing Addendum
attached as Exhibit 9. All such insurance policies (collectively, the "hazard insurance policy")
contain a standard mortgagee clause naming the Seller, its successors and assigns as mortgagee
and all premiums thereon have been paid. If the Mortgaged Property is in an area identified in
the Federal Register by the Federal Emergency Management Agency as having special flood
hazards (and such flood insurance has been made available) a flood insurance policy meeting the
requirements of the current guidelines of the Federal Insurance Administration is in effect which
policy conforms to the requirements of either FNMA or FHLMC. The Mortgage obligates the
Mortgagor thereunder to maintain all such insurance at Mortgagor's cost and expense, and on the
Mortgagor's failure to do so, authorizes the holder of the Mortgage to maintain such insurance at
Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor;

(vii)     Any and all requirements of any federal, state or local law
including, without limitation, all applicable predatory and abusive lending, usury, truth in
lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or
disclosure laws applicable to the Mortgage Loan have been complied with;

(viii)    The Mortgage has not been satisfied, canceled, subordinated, or
rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of
the Mortgage, in whole or in part, nor has any instrument been executed that would effect any
such release, cancellation, subordination or rescission;

(ix)      The Mortgage is a valid, existing and enforceable first lien on the
Mortgaged Property, including all improvements on the Mortgaged Property, subject only to (a)
the lien of current real property taxes and assessments not yet due and payable, (b) covenants,
conditions and restrictions, rights of way, easements and other matters of the public record as of
the date of recording being acceptable to mortgage lending institutions generally and specifically
referred to in lender's title insurance policy delivered to the originator of the Mortgage Loan and
which do not adversely affect the Appraised Value of the Mortgaged Property, and (c) other
matters to which like properties are commonly subject which do not materially interfere with the
benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or
marketability of the related Mortgaged Property. Any security agreement, chattel mortgage or
equivalent document related to and delivered in connection with the Mortgage Loan establishes
and creates a valid, existing and enforceable first lien and first priority security interest on the

-18-

property described therein and the Seller has full right to sell and assign the same to the Purchaser;

(x) The Mortgage Note and the related Mortgage are genuine and each is the legal, valid and binding obligation of the maker thereof, enforceable in accordance with its terms, except as the enforceability thereof may be limited by bankruptcy, insolvency, or reorganization;

(xi) To the best of the Seller's knowledge after reasonable inquiry and investigation, all parties to the Mortgage Note and the Mortgage had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage, and the Mortgage Note and the Mortgage have been duly and properly executed by such parties. The Mortgagor is a natural person or is otherwise an eligible borrower under FNMA's Selling Guide or FHLMC's Selling Guide;

(xii) The proceeds of the Mortgage Loan have been fully disbursed and there is no requirement for future advances thereunder and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefore have been complied with. All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage;

(xiii) The Seller is the sole owner and holder of the Mortgage Loan. The Mortgage Loan is not assigned or pledged, and the Seller has good and marketable title thereto and has full right to transfer and sell the Mortgage Loan to the Purchaser free and clear of any encumbrance, equity, lien, pledge, charge, claim or security interest and has full right and authority subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan pursuant to this Agreement;

(xiv) To the best of the Seller's knowledge, after reasonable inquiry and investigation, all parties which have had any interest in the Mortgage, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) (a) in compliance with any and all applicable licensing requirements of the laws of the state wherein the Mortgaged Property is located, and (b) organized under the laws of such state, or (c) qualified to do business in such state, or (d) a federal savings and loan association or national bank having principal offices in such state, or (e) not doing business in such state;

(xv) The Mortgage Loan is covered by an ALTA lender's title insurance policy acceptable to either FNMA or FHLMC, issued by a title insurer acceptable to either FNMA or FHLMC and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring (subject to the exceptions contained in (ix)(a) and (b) above) the Seller, its successors and assigns as to the first priority lien of the Mortgage in the original principal amount of the Mortgage Loan and, in the case of an Adjustable Rate Mortgage Loan, against any loss by reason of the invalidity or unenforceability of the lien resulting from the provisions of the Mortgage Note and/or Mortgage providing for adjustment in the Mortgage Interest Rate and Monthly Payment. Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged

-19-

Property or any interest therein. The Seller is the sole insured of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement. No claims have been made under such lender's title insurance policy, and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such lender's title insurance policy;

(xvi)    There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and the Seller has not waived any default, breach, violation or event of acceleration;

(xvii)    To the best of the Seller's knowledge after reasonable inquiry and investigation, there are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under law could give rise to such lien) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage;

(xviii)    To the best of the Seller's knowledge after reasonable inquiry and investigation, all improvements which were considered in determining the Appraised Value (as defined in clause (i) of said definition) of the related Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property;

(xix)    The Mortgage Loan was originated by the Seller or by a savings and loan association, a savings bank, a commercial bank or similar banking institution which is supervised and examined by a federal or state authority, or by a mortgagee approved as such by the Secretary of HUD pursuant to Sections 203 and 211 of the National housing Act. Principal payments on the Mortgage Loan commenced no more than sixty (60) days after funds were disbursed in connection with the Mortgage Loans. With respect to each Mortgage Loan, the Mortgage Note is payable on the Due Date in Monthly Payments, which, (A) in the case of a Fixed Rate Mortgage Loan, are sufficient to fully amortize the original principal balance over the original term thereof and to pay interest at the related Mortgage Interest Rate, and (B) in the case of an Adjustable Rate Mortgage Loan, are changed on each Payment Adjustment Date, and in any case, are sufficient to fully amortize the original principal balance over the original term thereof and to pay interest at the related Mortgage Interest Rate;

(xx)    The origination and collection practices used by the Seller with respect to each Mortgage Note and Mortgage have been in all respects legal, proper, prudent and customary in the mortgage origination and servicing business. With respect to escrow deposits and Escrow Payments, if any, all such payments are in the possession of, or under the control of, the Seller and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. No escrow deposits or Escrow Payments or other charges or payments due the Seller have been capitalized under any Mortgage or the related Mortgage Note. With respect to Adjustable Rate Mortgage Loans, all Mortgage Interest Rate adjustments have been made in strict compliance with state and federal law and the

-20-

terms of the related Mortgage Note. Any interest required to be paid pursuant to state and local law has been properly paid and credited:

(xxi)    To the best of the Seller's knowledge, after reasonable inquiry and investigation, the Mortgaged Property is free of damage and waste and there is no proceeding pending for the total or partial condemnation thereof;

(xxii)    The Mortgage contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including, (a) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (b) otherwise by judicial foreclosure. There is no other exemption available to the Mortgagor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage. There is no homestead or other exemption available to the Mortgagor which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage. The Mortgagor has not notified the Seller and the Seller has no knowledge of any relief requested or allowed to the Mortgagor under the Soldiers and Sailors Civil Relief Act of 1940;

(xxiii)    The Mortgage Loan was underwritten generally in accordance with the Seller's underwriting standards in effect at the time the Mortgage Loan was originated or acquired and the underwriting guidelines described in the related Purchase Price and Terms Letter. The Seller's underwriting standards in effect as of the date of the initial Closing Date have been delivered to Purchaser and are attached hereto as Exhibit 10;

(xxiv)    The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage referred to in (ix) above;

(xxv)    The Mortgage File contains an appraisal of the related Mortgaged Property signed prior to the approval of the Mortgage Loan application by an appraiser which meets the minimum FNMA or FHLMC requisite qualifications for appraisers, duly appointed by the originator, who had no interest, direct or indirect in the Mortgaged Property or in any loan made on the security thereof, and whose compensation is not affected by the approval or disapproval of the Mortgage Loan; the appraisal is in a form acceptable to FNMA or FHLMC, with such riders as are acceptable to FNMA or FHLMC, as the case may be;

(xxvi)    In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor;

(xxvii)    No Mortgage Loan contains provisions pursuant to which Monthly Payments are (a) paid or partially paid with funds deposited in any separate account established by the Seller, the Mortgagor, or anyone on behalf of the Mortgagor, (b) paid by any source other than the Mortgagor or (c) contains any other similar provisions which may

-21-

constitute a "buydown" provision. The Mortgage Loan is not a graduated payment mortgage loan and the Mortgage Loan does not have a shared appreciation or other contingent interest feature;

(xxviii) With respect to an Adjustable Rate Mortgage Loan, the Mortgagor has received all disclosure materials required by applicable law with respect to the making of an adjustable rate mortgage loan and rescission materials with respect to Refinanced Mortgage Loans. The Seller shall maintain all such statements in the Mortgage File;

(xxix) No Mortgage Loan was made in connection with (a) the construction or rehabilitation of a Mortgaged Property or (b) facilitating the trade-in or exchange of a Mortgaged Property;

(xxx) The Seller has no knowledge of any circumstances or condition with respect to the Mortgage, the Mortgaged Property or the Mortgagor that can reasonably be expected to cause the Mortgage Loan to become delinquent, or adversely affect the value of the Mortgage Loan;

(xxxi) No Mortgage Loan has a Loan-to-Value Ratio at origination in excess of 95% or as otherwise set forth in the related Purchase Price and Terms Letter. Each such Mortgage Loan with an LTV at origination in excess of 80% is and will be subject to a Primary Mortgage Insurance Policy, issued by an insurer approved by FNMA or FHLMC, which insures that portion of the Mortgage Loan over 75% of the Appraised Value of the related Mortgaged Property. All provisions of such Primary Mortgage Insurance Policy have been and are being complied with, such policy is in full force and effect, and all premiums due thereunder have been paid. Any Mortgage subject to any such Primary Mortgage Insurance Policy obligates the Mortgagor thereunder to maintain such insurance and to pay all premiums and charges in connection therewith, except with respect to any Lender PMI Mortgage Loan. Except in connection with a Lender PMI Mortgage Loan, the Mortgage Interest Rate for the Mortgage Loan is exclusive of any such insurance premium;

(xxxii) To the best of the Seller's knowledge, after reasonable inquiry and investigation, the Mortgaged Property is lawfully occupied under applicable law. To the best of the Seller's knowledge after reasonable inquiry and investigation, all inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy, have been made or obtained from the appropriate authorities;

(xxxiii) No action has been taken or failed to be taken, no event has occurred and no state of facts exists or has existed on or prior to the Closing Date (whether or not known to the Seller on or prior to such date) which has resulted or will result in an exclusion from, denial of, or defense to coverage under any private mortgage insurance (including, without limitation, any exclusions, denials or defenses which would limit or reduce the availability of the timely payment of the full amount of the loss otherwise due thereunder to the insured) whether arising out of actions, representations, errors, omissions, negligence, or fraud of the Seller, and to the best of the Seller's knowledge, the Mortgagor or any other party involved in the application for such coverage, including the appraisal, plans and specifications and other exhibits or documents submitted therewith to the insurer under such insurance policy, or for any other

-22-

reason under such coverage, but not including the failure of such insurer to pay by reason of such insurer's breach of such insurance policy or such insurer's financial inability to pay;

(xxxiv) To the best of the Seller's knowledge, after reasonable inquiry and investigation, the Assignment of Mortgage, is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located;

(xxxv) Any future advances made to the Mortgagor prior to the Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term. The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to FNMA or FHLMC. The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan;

(xxxvi) If the Mortgaged Property is a condominium unit or a planned unit development (other than a de minimis planned unit development) such condominium or planned unit development project meets the eligibility requirements for FNMA or FHLMC;

(xxxvii) The Mortgage Note and Mortgage are on forms acceptable to FNMA or FHLMC;

(xxxviii)    The Mortgaged Property is located in the state indicated on the Mortgage Loan Schedule, and consists of a single parcel of real property with a detached single family residence erected thereon, or an individual condominium unit, or a 2-4 family dwelling or an individual unit in a planned unit development as defined by FNMA, none of which is a mobile home, manufactured dwelling, cooperative housing, commercial property or mixed use property;

(xxxix)    The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered with respect to each Mortgage Loan pursuant to the Custodial Agreement, have been delivered to the Custodian all in compliance with the specific requirements of the Custodial Agreement. With respect to each Mortgage Loan, the Seller is in possession of a complete Mortgage File in compliance with Exhibit 5, except for such documents as have been delivered to the Custodian;

(xl)    Except for a Mortgage Loan secured by Mortgaged Property located in the state of Hawaii, no Mortgage Loan is secured by a Mortgage on a leasehold estate. With respect to Mortgage Loans in the state of Hawaii that are secured by a leasehold estate, (i) the lease is valid, in full force and effect, and conforms to all of FNMA's requirements for leasehold estates; (ii) all rents and other payments due under the lease have been paid; (iii) the lessee is not in default under any provision of the lease; (iv) the term of the lease exceeds the maturity date of the related Mortgage Loan by at least ten years; and (v) the mortgagee under the Mortgage Loan is given notice and an opportunity to cure any defaults under the lease;

-23-

(xli)    The Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the mortgagee thereunder;

(xlii)    Except as set forth on the related Purchase Price and Terms Letter, interest on each Mortgage Loan is calculated on the basis of a 360-day year consisting of twelve 30-day months;

(xliii)    No fraud was committed by the Seller in connection with the origination or servicing of the Mortgage Loan and to the best of Seller's knowledge, no fraud was committed with respect to the Mortgage Loan on the part of the Mortgagor or any other person involved in the origination of the Mortgage Loan;

(xliv)    No Mortgage Loan was originated in the state of Texas under Article XVI, Section 50(a)(6) of the Texas Constitution;

(xlv)    To the best of Seller's knowledge after reasonable inquiry and investigation, the Mortgaged Property is in material compliance with all applicable environmental laws pertaining to environmental hazards including, without limitation, asbestos, and neither the Seller nor, to the Seller's knowledge, the related Mortgagor, has received any notice of any violation of such law;

(xlvi)    No Mortgage Loan is (a) subject to the provisions of the Homeownership and Equity Protection Act of 1994 as amended ("HOEPA"), (b) a "high cost" mortgage loan, "covered" mortgage loan or "predatory" mortgage loan under any federal, state or local law, or (c) subject to any comparable federal, state or local statutes or regulations, including, without limitation, the provisions of the Georgia Fair Lending Act, the City of Oakland, California Anti-Predatory Lending Ordinance No. 12361 or any other statute or regulation providing assignee liability to holders of such mortgage loans;

(xlvii)    None of the proceeds of the Mortgage Loan were used to finance the purchase of single premium credit life or disability insurance policies or any comparable insurance;

(xlviii)    No Mortgage Loan secured by a mortgaged property located in the State of Georgia was originated after October 1, 2002 and prior to March 7, 2003;

(lii)    No Mortgage Loan has a balloon payment feature; and

(liii)    No Mortgage Loan is a Convertible Mortgage Loan.

Subsection 7.03.    Remedies for Breach of Representations and Warranties.

It is understood and agreed that the representations and warranties set forth in Subsections 7.01 and 7.02 shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on

-24-

any Mortgage Note or Assignment of Mortgage or the examination or failure to examine any Mortgage File. With respect to the representations and warranties contained in Subsection 7.02 which are made to the best of the Seller's knowledge, after reasonable inquiry and investigation, if it is discovered by either the Seller or the Purchaser that the substance of such representation and warranty is inaccurate and such inaccuracy materially and adversely affects the value of the related Mortgage Loan, the Purchaser shall be entitled to all the remedies to which it would be entitled for a breach of representation or warranty, including, without limitation, the repurchase requirements contained herein, notwithstanding the Seller's lack of knowledge with respect to the inaccuracy at the time the representation or warranty was made. Upon discovery by either the Seller or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of one or more of the Mortgage Loans or which materially and adversely affects the interests of the Purchaser in one or more of the Mortgage Loans, the party discovering such breach shall give prompt written notice to the other.

The Seller shall have a period of ninety (90) days from the earlier of its discovery of a breach or the receipt by Seller of notice of such a breach within which to correct or cure such breach. The Seller hereby covenants and agrees that if any such breach cannot be corrected or cured within such ninety (90) day period, the Seller shall, at Purchaser's option and not later than ninety (90) days after its discovery or its receipt of notice of such breach, repurchase such Mortgage Loan at the Repurchase Price. In the event that a breach shall involve any representation or warranty set forth in Subsection 7.01 and such breach cannot be cured within ninety (90) days of the earlier of either discovery by or notice to the Seller of such breach, all of the Mortgage Loans shall, at the Purchaser's option, be repurchased by the Seller at the Repurchase Price. However, if the breach shall involve a representation or warranty set forth in Subsection 7.02 and the Seller discovers or receives notice of any such breach within the later of one hundred and twenty (120) days of the related Closing Date or the Reconstitution Date, the Seller may, provided that the Seller has a Qualified Substitute Mortgage Loan (or Loans), rather than repurchase the Mortgage Loan as provided above, remove such Mortgage Loan and substitute in its place a Qualified Substitute Mortgage Loan or Loans, provided that (i) any such substitution shall be effected not later than the later of one hundred and twenty (120) days of the related Closing Date or (ii) the Reconstitution Date prior to any substitution into a REMIC pass-through entity, upon reasonable request by the Purchaser, the Seller shall provide the Purchaser with an Opinion of Counsel that the substitution of the applicable Qualified Substitute Mortgage Loan will not affect the status of the pass-through entity as a REMIC. If the Seller has no Qualified Substitute Mortgage Loan, it shall repurchase the deficient Mortgage Loan. Any repurchase of a Mortgage Loan(s) pursuant to the foregoing provisions of this Subsection 7.03 shall be accomplished by deposit in the Custodial Account of the amount of the Repurchase Price for distribution to Purchaser on the next scheduled Remittance Date, after deducting therefrom any amount received in respect of such repurchased Mortgage Loan or Loans and being held in the Custodial Account for future distribution.

At the time of repurchase or substitution, the Purchaser and the Seller shall arrange for the reassignment of the Deleted Mortgage Loan to the Seller and the delivery to the Seller of any documents held by the Purchaser or Custodian relating to the Deleted Mortgage Loan. The Servicing File shall also be deemed released to the Seller for any Deleted Mortgage Loan. In the event of a repurchase or substitution, the Seller shall, simultaneously with such

-25-