## EXHIBIT 3

## SECURITY RELEASE CERTIFICATION

1.    Release of Security Interest

_____, duly authorized as collateral agent for the lenders from time to time participating in that certain Amended and Restated Mortgage Loan Warehousing Agreement, dated as of _____ _, 200_, with _____ as agent, as amended from time to time (the "Warehousing Agreement"), to relinquish any and all right, title and interest it may have as collateral agent in the mortgage loans described in Exhibit A attached hereto (the "Mortgage Loans"), hereby relinquishes any and all right, title and interest it may have as collateral agent in and to the Mortgage Loans upon purchase thereof by Purchaser from the Seller named below pursuant to that certain Master Mortgage Loan Purchase and Servicing Agreement, dated as of April 1, 2003, as of the date and time of receipt by _____, as funding bank under the Warehousing Agreement, of $_____ for such Mortgage Loans (the "Date and Time of Sale"), and certifies that all notes, mortgages, assignments and other documents in its possession relating to such Mortgage Loans have been delivered and released to the Seller named below or its designees as of the Date and Time of Sale.

Name and Address of Financial Institution

(Name)

(Address)

By:_____

II.    Certification of Release

The Seller named below hereby certifies to Purchaser that, as of the Date and Time of Sale of the above mentioned Mortgage Loans to Purchaser, the security interests in the Mortgage Loans released by the above named corporation comprise all security interests relating to or affecting any and all such Mortgage Loans. The Seller warrants that, as of such time, there are and will be no other security interests affecting any or all of such Mortgage Loans.

COUNTRYWIDE HOME LOANS, INC.
Seller

By:_____
Name:
Title:

## EXHIBIT 4

### ASSIGNMENT AND CONVEYANCE

On this ____ day of _____, 200_, Countrywide Home Loans, Inc. ("Countrywide") as the Seller under that certain Master Mortgage Loan Purchase and Servicing Agreement, dated as of April 1, 2003, (the "Agreement") does hereby sell, transfer, assign, set over and convey to Greenwich Capital Financial Products, Inc., as Purchaser under the Agreement, without recourse, but subject to the terms of the Agreement, all rights, title and interest of Countrywide (excluding the right to service the Mortgage Loans) in and to the Mortgage Loans listed on the Mortgage Loan Schedule attached hereto, together with the Mortgage Files and all rights and obligations arising under the documents contained therein. Pursuant to Subsection 6.03 of the Agreement, Countrywide has delivered to the Custodian the documents for each Mortgage Loan to be purchased as set forth in the Custodial Agreement. The contents of each Servicing File required to be retained by Countrywide to service the Mortgage Loans pursuant to the Agreement and thus not delivered to Purchaser are and shall be held in trust by Countrywide for the benefit of Purchaser as the owner thereof. Countrywide's possession of any portion of the Servicing File is at the will of Purchaser for the sole purpose of facilitating servicing of the related Mortgage Loan pursuant to the Agreement, and such retention and possession by Countrywide shall be in a custodial capacity only. The ownership of each Mortgage Note, Mortgage, and the contents of the Mortgage File and Servicing File is vested in Purchaser and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of Countrywide shall immediately vest in Purchaser and shall be retained and maintained, in trust, by Countrywide at the will of Purchaser in such custodial capacity only.

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Agreement.

COUNTRYWIDE HOME LOANS, INC.

By:_____
Name:
Title:

## EXHIBIT 5

### CONTENTS OF EACH MORTGAGE FILE

With respect to each Mortgage Loan, the Mortgage File shall include each of the following items as required by the applicable Mortgage Loan documentation style, which shall be available for inspection by the Purchaser and which shall be retained by the Seller or delivered to the Custodian pursuant to Section 2 of the Custodial Agreement:

1. The original Mortgage Note endorsed by manual or facsimile signature in blank in the following form: "Pay to the order of _____, without recourse" with all intervening endorsements showing a complete chain of endorsements from the originator to the Seller;

2. In the case of each Mortgage Loan that is not a MERS Mortgage Loan, a duly executed Assignment of Mortgage, from the Seller in blank, which assignment shall be in form and substance acceptable for recording;

3. For each Mortgage Loan that is not a MERS Mortgage Loan, the original recorded Mortgage and in the case of each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN for that Mortgage Loan and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, or if such Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment to MERS, with evidence of recording thereon. If in connection with any Mortgage Loan, the Seller has not delivered or caused to be delivered the original Mortgage with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost or because such public recording office retains the original recorded Mortgage, the Seller shall deliver or cause to be delivered to the Purchaser or the Purchaser's designee, (a) in the case of a delay caused by the public recording office, a copy of such Mortgage certified by the Seller to be a true and complete copy of the original recorded Mortgage and (b) in the case where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage;

4. The original policy of title insurance and all riders thereto; if the policy has not yet been issued, such title insurance policy shall be delivered to the Purchaser or its designee promptly upon receipt thereof by the Seller but in no event later than the time specified below;

5. Recorded originals of any intervening assignments, showing a complete chain of title from the originator to the Seller (or to MERS, if the Mortgage Loan is registered on the MERS System), with evidence of recording thereon;

6. Originals of each assumption, modification, written assurance or substitution of liability agreement, if any;

7.     The original of each guarantee executed in connection with the Mortgage Note, if any;

9.     The original Primary Mortgage Insurance Policy, if the Loan-to-Value Ratio indicated on the Mortgage Loan Schedule exceeds 80%, or if the Mortgage was processed with the insurer of such Primary Mortgage Insurance Policy via electronic data interchange, the Seller shall provide in lieu of the original Primary Mortgage Insurance Policy a printout of the Seller's primary insurance servicing screen which indicates information including (but not limited to) the name of the insurer of such Primary Mortgage Insurance Policy and the certificate number of the Primary Mortgage Insurance Policy, if any; and

10.    If the Mortgage Note, the Mortgage, any Assignment of Mortgage or any other related document has been signed by a Person on behalf of the Mortgagor, the original power of attorney or other instrument that authorized and empowered such Person to sign.

11.    Copy of survey of the Mortgaged Property.

12.    Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy, i.e., map or plat, restrictions, easements, sewer agreements, homes association declarations, etc.

13.    Original hazard insurance policy and, if required by law, flood insurance policy, with extended coverage of the hazard insurance policy.

14.    Mortgage Loan closing statement.

15.    Residential loan application.

16.    Verification of employment and income, depending upon the documentation program under which the Mortgage Loan was originated.

17.    Verification of source and amount of downpayment.

18.    Credit report on the Mortgagor.

19.    Residential appraisal report and attachments thereto.

20.    Photograph of the property including front, back and street scene.

21.    Photograph of comparable properties.

22.    Executed disclosure statement required by applicable law.

23.    Tax receipts, insurance premium receipts, ledger sheets, payment records, insurance claim files and correspondence, correspondence, current and historical computerized data files, underwriting standards used for origination and all other papers and records developed or originated by the Seller or others, required to qualify the Mortgage Loan.

[TPW: NYLEGAL:140749 6] 16159-00207  04/30/2003 3:38 PM

2

24.     If available, termite report, structural engineer's report, water potability and septic certification.

25.     Sales contract, if applicable.

26.     Amortization schedule, if available.

27.     Seller shall provide Purchaser with the payment history for any Mortgage Loans if requested by the Purchaser.

28.     The original power of attorney or a copy thereof, if any, certified by an authorized officer of the Seller, for any document described above which is delivered to the Custodian.

29.     A written commitment or interim binder or preliminary report of title issued by the title insurance company dated as of the date the Mortgage Loan was funded.

In addition, in connection with the assignment of any MERS Mortgage Loan, the Seller has caused the MERS System to indicate that such Mortgage Loans have been assigned by the Seller to the Purchaser in accordance with this Agreement by including in such computer files the information required by the MERS System to identify the Purchaser and the series in which such Mortgage Loans were sold. The Seller has not and agrees that it will not alter the codes referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

If pursuant to the foregoing provisions the Seller repurchases a Mortgage Loan that is a MERS Mortgage Loan, the Seller shall either (i) cause MERS to execute and deliver an Assignment of Mortgage in recordable form to transfer the Mortgage from MERS to the Seller and shall cause such Mortgage to be removed from registration on the MERS System in accordance with MERS' rules and regulations or (ii) cause MERS to designate on the MERS System the Seller or its designee as the beneficial holder of such Mortgage Loan.

In the event that any of the documents listed in paragraph 3 to 7 inclusive have not been delivered and released to the Purchaser or its designee (the "Missing Documents") within ten (10) Business Days of the initial purchase of a Mortgage Loan by either Purchaser or its predecessor in interest (the "Delivery Date"), then the Seller shall use its best efforts to deliver the recordable Missing Documents to the Purchaser or its designee within eighteen (18) months following the related Delivery Date and non-recordable Missing Documents within one hundred and twenty (120) days of the related Delivery Date. After the Seller concludes that it will not be able to deliver the Missing Documents to the Purchaser or its designee, but in no event later than eighteen (18) months following the related Delivery Date for recordable Missing Documents and one hundred and twenty (120) days for non-recordable Missing Documents, the Seller shall notify the Purchaser and upon written request from the Purchaser the related Mortgage Loan shall be repurchased by the Seller at the price and in the manner specified in Subsection 7.03.

# EXHIBIT 6

## FORM OF CUSTODIAL AGREEMENT

## EXHIBIT 7

### CUSTODIAL ACCOUNT LETTER AGREEMENT

_____, 200_

To:    _____

       _____

       _____

the "Depository")

       As Seller under the Master Mortgage Loan Purchase and Servicing Agreement, dated as of April 1, 2003, we hereby authorize and request you to establish an account, as a Custodial Account, to be designated as "Countrywide Home Loans, Inc. in trust for the Purchaser." All deposits in the account shall be subject to withdrawal therefrom by order signed by the Seller. You may refuse any deposit which would result in violation of the requirement that the account be fully insured as described below. This letter is submitted to you in duplicate. Please execute and return one original to us.

COUNTRYWIDE HOME LOANS, INC.

By:_____

Name:

Title:

Date:

The undersigned, as Depository, hereby certifies that the above-described account has been established under Account Number _____ at the office of the Depository indicated above, and agrees to honor withdrawals on such account as provided above. The full amount deposited at any time in the account will be insured by the Federal Deposit Insurance Corporation through the Bank Insurance Fund ("BIF") or the Savings Association Insurance Fund ("SAIF").

_____
Depository

By:_____
Name:
Title:
Date:

## EXHIBIT 8

### ESCROW ACCOUNT LETTER AGREEMENT

_____, 200_

To:       _____
          _____
          _____
(the "Depository")

       As Seller under the Master Mortgage Loan Purchase and Servicing Agreement, dated as of April 1, 2003, we hereby authorize and request you to establish an account, as an Escrow Account, to be designated as "Countrywide Home Loans, Inc. in trust for the Purchaser and various Mortgagors." All deposits in the account shall be subject to withdrawal therefrom by order signed by the Seller. You may refuse any deposit which would result in violation of the requirement that the account be fully insured as described below. This letter is submitted to you in duplicate. Please execute and return one original to us.

                      COUNTRYWIDE HOME LOANS, INC.

                      By_____
                      Name:
                      Title:
                      Date:

The undersigned, as Depository, hereby certifies that the above-described account has been established under Account Number _____ at the office of the Depository indicated above, and agrees to honor withdrawals on such account as provided above. The full amount deposited at any time in the account will be insured by the Federal Deposit Insurance Corporation through the Bank Insurance Fund ("BIF") or the Savings Association Insurance Fund ("SAIF").

_____

Depository

By:_____

Name:

Title:

Date:

**EXHIBIT 9**

SERVICING ADDENDUM

Section 11.01  Seller to Act as Servicer.

The Seller, as independent contract servicer, shall service and administer the Mortgage Loans in accordance with this Agreement and the normal and usual standards of practice of prudent mortgage lenders, and shall have full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration which the Seller may deem necessary or desirable and consistent with the terms of this Agreement.

Consistent with the terms of this Agreement, the Seller may waive, modify or vary any term of any Mortgage Loan or consent to the postponement of strict compliance with any such term or in any manner grant indulgence to any Mortgagor if in the Seller's reasonable and prudent determination such waiver, modification, postponement or indulgence is not materially adverse to the Purchaser; provided, however, that the Seller shall not permit any modification with respect to any Mortgage Loan that would decrease the Mortgage Interest Rate (other than by adjustments required by the terms of the Mortgage Note), defer or forgive the payment thereof or of any principal or interest payments, reduce the outstanding principal amount (except for actual payments of principal), make future advances or extend the final maturity date on such Mortgage Loan without the Purchaser's consent. The Seller may permit forbearance or allow for suspension of Monthly Payments in either case for up to one hundred and eighty (180) days if the Mortgagor is in default or the Seller determines in its reasonable discretion that default is imminent and if the Seller determines that granting such forbearance or suspension is in the best interest of the Purchaser. In the event that any such modification, forbearance or suspension as permitted above allows the deferral of interest or principal payments on any Mortgage Loan, the Seller shall include in each remittance for any month in which any such principal or interest payment has been deferred (without giving effect to such modification, forbearance or suspension) an amount equal to, as the case may be, such month's principal and one (1) month's interest at the Mortgage Loan Remittance Rate on the then unpaid principal balance of the Mortgage Loan and shall be entitled to reimbursement for such advances only to the same extent as for Monthly Advances made pursuant to Section 11.19. Without limiting the generality of the foregoing, the Seller shall continue, and is hereby authorized and empowered to execute and deliver on behalf of itself, and the Purchaser, all instruments of satisfaction or cancellation, or of partial or full release, discharge and all other comparable instruments, with respect to the Mortgage Loans and with respect to the Mortgaged Property. If reasonably required by the Seller, the Purchaser shall furnish the Seller with any powers of attorney and other documents necessary or appropriate to enable the Seller to carry out its servicing and administrative duties under this Agreement.

In servicing and administering the Mortgage Loans, the Seller shall employ procedures including collection procedures and exercise the same care that it customarily employs and exercises in servicing and administering mortgage loans for its own account giving

due consideration to accepted mortgage servicing practices of prudent lending institutions and the Purchaser's reliance on the Seller.

## Section 11.02 Collection of Mortgage Loan Payments.

Continuously from the date hereof until the principal and interest on all Mortgage Loans is paid in full, the Seller will proceed diligently to collect all payments due under each Mortgage Loan when the same shall become due and payable and shall, to the extent such procedures shall be consistent with this Agreement and the terms and provisions of any related Primary Mortgage Insurance Policy, follow such collection procedures as it follows with respect to mortgage loans comparable to the Mortgage Loans and held for its own account. Further, the Seller will take special care in ascertaining and estimating annual ground rents, taxes, assessments, water rates, fire and hazard insurance premiums, mortgage insurance premiums, and all other charges that, as provided in the Mortgage, will become due and payable. To that end, the Seller shall ensure that the installments payable by the Mortgagors will be sufficient to pay such charges as and when they become due and payable.

## Section 11.03 Realization Upon Defaulted Mortgage Loans.

The Seller shall use its best efforts, consistent with the procedures that the Seller would use in servicing loans for its own account, to foreclose upon or otherwise comparably convert the ownership of properties securing such of the Mortgage Loans as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments pursuant to Section 11.01. The Seller shall use its best efforts to realize upon defaulted Mortgage Loans in such manner as will maximize the receipt of principal and interest by the Purchaser, taking into account, among other things, the timing of foreclosure proceedings. The foregoing is subject to the provisions that, in any case in which Mortgaged Property shall have suffered damage, the Seller shall not be required to expend its own funds toward the restoration of such property in excess of $2,000 unless it shall determine in its discretion (i) that such restoration will increase the proceeds of liquidation of the related Mortgage Loan to the Purchaser after reimbursement to itself for such expenses, and (ii) that such expenses will be recoverable by the Seller through Primary Mortgage Insurance Proceeds, Other Insurance Proceeds or Liquidation Proceeds from the related Mortgaged Property, as contemplated in Section 11.05. The Seller shall notify the Purchaser in writing of the commencement of foreclosure proceedings. Such notice may be contained in the reports prepared by the Seller and delivered to Purchaser pursuant to the terms and conditions of this Agreement. In such connection, the Seller shall be responsible for all costs and expenses incurred by it in any such proceedings; provided, however, that it shall be entitled to reimbursement thereof from the related property, as contemplated in Section 11.05.

The Seller, in its sole discretion, shall have the right to purchase for its own account any Mortgage Loan which is ninety- one (91) days or more delinquent at the Repurchase Price; provided, however that the Seller shall not be entitled to exercise such purchase if the delinquency is caused directly or indirectly by an act or omission of the Seller which would constitute a breach or violation of its obligations hereunder. Any such purchase by the Seller shall be accomplished by deposit in the Custodial Account the amount of the purchase price

stated in the preceding sentence, after deducting therefrom any amounts received in respect of such purchased Mortgage Loan and being held in the Custodial Account for future distribution.

Section 11.04 <u>Establishment of Custodial Accounts: Deposits in Custodial Accounts</u>.

The Seller shall segregate and hold all funds collected and received pursuant to each Mortgage Loan separate and apart from any of its own funds and general assets and shall establish and maintain one (1) or more Custodial Accounts, in the form of time deposit or demand accounts which accounts shall be Eligible Accounts. The creation of any Custodial Account shall be evidenced by a letter agreement in the form shown in <u>Exhibit 7</u> to this Agreement. A copy of such letter agreement shall be furnished to the Purchaser upon request.

The Seller shall deposit in the Custodial Account within two (2) Business Days of receipt, and retain therein the following payments and collections received or made by it subsequent to the Cut-off Date, or received by it prior to the Cut-off Date but allocable to a period subsequent thereto, other than in respect of principal and interest on the Mortgage Loans due on or before the Cut-off Date:

(i)     all payments on account of principal, including Principal Prepayments, on the Mortgage Loans;

(ii)    all payments on account of interest on the Mortgage Loans adjusted to the Mortgage Loan Remittance Rate;

(iii)   all proceeds from a Cash Liquidation;

(iv)   all Primary Mortgage Insurance Proceeds and Other Insurance Proceeds including amounts required to be deposited pursuant to Sections 11.08, 11.10 and 11.11, other than proceeds to be held in the Escrow Account and applied to the restoration or repair of the Mortgaged Property or released to the Mortgagor in accordance with the Seller's normal servicing procedures, the loan documents or applicable law;

(v)    all Condemnation Proceeds affecting any Mortgaged Property which are not released to the Mortgagor in accordance with the Seller's normal servicing procedures, the Mortgage Loan Documents or applicable law;

(vi)   any Monthly Advances;

(vii)  all proceeds of any Mortgage Loan repurchased in accordance with Sections 7.03 and 11.03, and any amount required to be deposited by the Seller in connection with any shortfall in principal amount of the Qualified Substitute Mortgage Loans and the Deleted Mortgage Loans as required pursuant to Section 7.03;

(viii) any amounts required to be deposited by the Seller pursuant to Section 11.10 in connection with the deductible clause in any blanket hazard insurance policy such deposit shall be made from the Seller's own funds, without reimbursement therefor;

(ix)    the Prepayment Interest Shortfall Amount, if any, for the month of distribution, such deposit shall be made from the Seller's own funds, without reimbursement therefor up to a maximum amount per month of the Servicing Fee actually received for such month for the Mortgage Loans;

(x)    any amounts required to be deposited by the Seller in connection with any REO Property pursuant to Section 11.13; and

(xi)    any amounts required to be deposited in the Custodial Account pursuant to Section 11.01, 11.14, 11.22 or 11.23.

The foregoing requirements for deposit in the Custodial Account shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments in the nature of late payment charges, prepayment penalties (except as otherwise set forth in a Purchase Price and Terms Letter) with respect to any Mortgage Loan Package, and assumption fees, to the extent permitted by Section 6.01, need not be deposited by the Seller in the Custodial Account. Any interest paid on funds deposited in the Custodial Account by the depository institution shall accrue to the benefit of the Seller and the Seller shall be entitled to retain and withdraw such interest from the Custodial Account pursuant to Section 11.05(iv).

If the balance on deposit in the Custodial Account were to exceeds the insured amount limits of an FDIC insured account as of the commencement of business on any Business Day and the Custodial Account constitutes an Eligible Account solely pursuant to clause (ii) of the definition of Eligible Account, the Seller shall, on or before twelve o'clock noon Eastern time on such Business Day, withdraw from the related Custodial Account all amounts in excess of the FDIC insurance limits and deposit such amounts in another account that constitutes an Eligible Account pursuant to clause (i) or (ii) of the definition of Eligible Account.

Section 11.05 Permitted Withdrawals From the Custodial Account.

The Seller may, from time to time, withdraw from the Custodial Account for the following purposes:

(xii)    to make payments to the Purchaser in the amounts and in the manner provided for in Section 11.17;

(xiii)    to reimburse itself for Monthly Advances, the Seller's right to reimburse itself pursuant to this subclause (ii) being limited to amounts received on the related Mortgage Loan (or to amounts received on the Mortgage Loans as a whole in the event that said Monthly Advance is made due to a shortfall in a Monthly Payment made by a Mortgagor entitled to relief under the Soldiers' and Sailors' Civil Relief Act of 1940) which represent Late Collections (net of the related Servicing Fees) respecting which any such advance was made it being understood that, in the case of such reimbursement, the Seller's right thereto shall be prior to the rights of the Purchaser, except that, where the Seller is required to repurchase a Mortgage Loan, pursuant to Section 7.03, the Seller's right to such reimbursement shall be subsequent to the payment to the Purchaser of the Repurchase Price pursuant to such section and all other amounts required to be paid to the Purchaser with respect to such Mortgage Loans; provided that

the Seller may reimburse itself from any funds in the Custodial Account for Monthly Advances which it has determined are nonrecoverable advances or if all funds with respect to the related Mortgage Loan have previously been remitted to the Purchaser;

(xiv)     to reimburse itself for unreimbursed Servicing Advances and any unpaid Servicing Fees, the Seller's right to reimburse itself pursuant to this subclause (iii) with respect to any Mortgage Loan being limited to related proceeds (or to amounts received on the Mortgage Loans only in the event that said Monthly Advance is made due to a shortfall in a Monthly Payment made by a Mortgagor entitled to relief under the Soldiers' and Sailors' Civil Relief Act of 1940) from Cash Liquidation, Liquidation Proceeds, Condemnation Proceeds, Primary Mortgage Insurance Proceeds and Other Insurance Proceeds; provided that the Seller may reimburse itself from any funds in the Custodial Account for Servicing Advances and Servicing Fees if all funds with respect to the related Mortgage Loan have previously been remitted to the Purchaser;

(xv)     to pay to itself as servicing compensation (a) any interest earned on funds in the Custodial Account (all such interest to be withdrawn monthly not later than each Remittance Date), and (b) the Servicing Fees from that portion of any payment or recovery as to interest with respect to a particular Mortgage Loan;

(xvi)     to pay to itself with respect to each Mortgage Loan that has been repurchased pursuant to Section 7.03 all amounts received thereon and not distributed as of the date on which the related repurchase price is determined;

(xvii)     to clear and terminate the Custodial Account upon the termination of this Agreement;

(xviii)     to reimburse the Seller for any Monthly Advance previously made which the Seller has determined to be a nonrecoverable Monthly Advance; and

(xix)     to reimburse itself for any amounts deposited in the Custodial Account in error.

Section 11.06   Establishment of Escrow Accounts: Deposits in Escrow Accounts.

The Seller shall segregate and hold all funds collected and received pursuant to each Mortgage Loan which constitute Escrow Payments separate and apart from any of its own funds and general assets and shall establish and maintain one (1) or more Escrow Accounts which accounts shall be Eligible Accounts, in the form of time deposit or demand accounts. The creation of any Escrow Account shall be evidenced by a letter agreement in the form shown in Exhibit 8 to this Agreement. A copy of such letter agreement shall be furnished to the Purchaser upon request.

The Seller shall deposit in the Escrow Account or Accounts within two (2) Business Days of receipt, and retain therein, (i) all Escrow Payments collected on account of the Mortgage Loans, for the purpose of effecting timely payment of any such items as required under the terms of this Agreement, and (ii) all Other Insurance Proceeds which are to be applied to the

[TPW: NYLEGAL 140749.6] 16159-00207 04/30/2003 3:38 PM

5